[No. 18901.   Department Two.   March 16, 1925.]

## Robert T. Perkins *et al., Respondents,* v. Georgia Verne Allen, *as Executrix, et al., Appellants.*[1]

Wills (8)—Contracts to Devise — Evidence — Sufficiency.   A contract with a stepfather whereby heirs released all interest in the estate of their mother, in consideration of which the stepfather orally promised to will the property to them, will be specifically enforced by fastening a trust upon the property, notwithstanding such a will was made and subsequently revoked by a later will.

Same (8)—Contracts to Devise—Consideration.   A stepfather's oral promise to will property to his wife's children is supported by a sufficient consideration where it was induced by the stepchildren's release of all interest in their mother's estate, although such interest was slight, giving the stepfather a fee therein, instead of a mere life estate.

Specific Performance (25)—Contracts to Devise—Limitations —Probate of Will.   Rem. Comp. Stat., § 1385, barring any contest of a will after notice given and the lapse of six months, does not bar an action for the specific performance of an oral contract previously made by the decedent to devise certain property held by him at the time of his death; since probate of the last will cannot be refused because of a contract to devise, enforcible only by a suit in equity.

Appeal from a judgment of the superior court for Whitman county, McCroskey, J., entered August 1, 1924, upon findings in favor of the plaintiffs, in an action for specific performance and to establish a trust, tried to the court.   Affirmed.

*Lundin & Barto* and *Tucker, Hyland & Elvidge,* for appellants.

*Robert D. Hamlin,* for respondents.

Holcomb, J.—A noticed motion by respondents to dismiss the appeal, passed by us to the consideration of the case on the merits, is now denied because of our determination on the merits.

[1]Reported in 233 Pac. 655.

The action is one to enforce specific performance of a verbal contract between the decedent and respondents to make a will and to establish a trust upon the estate in favor of respondents.

In their amended complaint respondents alleged that, on or about January 1, 1919, D. L. Getty entered into an oral agreement:

". . . by the terms and conditions of which it was provided that the probate of the estate of decedent (referring to the deceased wife of D. L. Getty, whose estate was then about to be probated) should be carried on as if she died intestate, and D. L. Getty should serve as administrator thereof, and in the course of such proceedings all of the property, real and personal, belonging to the said estate should be set off and awarded unto said D. L. Getty as his sole and separate property and estate, the said plaintiffs as heirs of decedent orally agreed to remise and release in said probate proceeding unto said D. L. Getty all right, title and interest acquired by them or either of them by reason of the said will or as heirs of the said decedent, and in consideration thereof the said D. L. Getty orally promised and agreed to hold in trust for the said plaintiffs the title to said premises for the period of his life, and thereafter the said real and personal property and all estate acquired by the said D. L. Getty should by will pass to and become the property of plaintiffs; and further orally agreed to execute a valid will disposing of all of said estate as follows: One-fifth to plaintiff Eva Wivell, two-fifths to plaintiff R. F. Perkins, and two-fifths to plaintiff John L. Perkins."

Upon the trial below, findings, conclusions and a judgment were made for respondents. A motion for a new trial was unsuccessfully made, this appeal resulting.

D. L. Getty and Harriet E. Getty were married in 1896, and lived as husband and wife, without issue, until December 22, 1918, when Harriet E. Getty died,

leaving as her only heirs her husband, D. L. Getty, a daughter, Eva Wivell, and two sons, Robert T. and John L. Perkins, the children being issue of a former marriage of herself. It appears that, in 1903, D. L. Getty deeded to his wife a certain forty-acre tract of land in King county, which comprised twenty acres, the major portion of the property involved in the former probate proceeding of the deceased wife, and in this proceeding. It would appear, therefore, that the twenty acres involved was the separate property of the deceased, Harriet E. Getty, at the time of her death. On July 19, 1915, Harriet E. Getty and D. L. Getty had both made their wills. The will of the wife purported to give a life estate in her property to D. L. Getty with the remainder to her sons and daughter, the devise to her husband being as long as he lives, and after his death her estate to be divided as follows: Five per cent to her daughter, and the balance equally to her two sons. D. L. Getty was a witness to the will of Harriet E. Getty, and there not being two other witnesses, and he being a beneficiary named in the will, after her death the will was not filed for probate, but a petition was filed by D. L. Getty for letters of administration which recited that the decedent left no will, the instrument filed with the petition being defective. The present attorney for respondents was the attorney for Getty when the petition for letters of administration upon the estate of his wife was filed. The superior court, in probate, made an order appointing Getty as administrator, which order found that Harriet E. Getty died interstate. Her estate was appraised by appraisers at $2,600. Thereafter, on March 20, 1919, D. L. Getty filed his petition to have all of his wife's estate of less than $3,000 set aside to him in lieu of homestead. On March 20, 1919, Eva Wivell, John L. Perkins and Robert T. Perkins executed a re-

ceipt of a copy of the petition to set aside the property as a homestead to D. L. Getty, and a release and consent to the entry of an order setting the property aside as petitioned. Due notice was given of the hearing on the petition, and on March 31, 1919, the court entered a decree awarding all of Harriet E. Getty's property to D. L. Getty absolutely, and the estate was thereupon settled and closed. On the same date (March 31, 1919), D. L. Getty executed a will leaving his property, one-fifth to Eva Wivell, two-fifths to Robert T. Perkins, and two-fifths to John L. Perkins. On January 12, 1920, D. L. Getty made another will, leaving $150 to Eva Wivell, $25 to Robert T. Perkins, $25 to John L. Perkins, and distributing the remainder to the three daughters of John L. Perkins and to the brothers and sisters of D. L. Getty. Georgia Verne Allen was nominated and after his decease, qualified as his executrix.

One of the principal contentions of appellants is that the evidence in support of the alleged oral contract is not sufficiently definite, clear and certain to justify the finding of the court that the oral contract was made. In view of the fact that "cases of this kind are not favored, and when the promise rests in parol are even regarded with suspicion, and will not be enforced except upon the strongest evidence that it was founded upon a valuable consideration and deliberately entered into by the decedent" (Waterman, Specific Performance, § 41; *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572), we have examined the entire record with great care; but as was said in the above cited case, "while not favored and rarely enforced upon oral proofs, the power to make a valid agreement to dispose of property by will in a particular case has long been recognized."

We have also declared that such a will as is here asserted was contracted to be made was a mere will and revokable at pleasure and was revoked by the execution of the subsequent will; yet the subsequent will could do no more than any other alienation of the property, and if the property was subject to an enforcible trust, it also could have no effect. *Olsen v. Hoag,* 128 Wash. 8, 221 Pac. 984.

The evidence is practically undisputed that there was a contract between Getty and respondents that respondents were to relinquish all interest in or under the will of their mother and let the entire estate go to D. L. Getty in consideration of the reciprocal promise by Getty that he would will the property to them, or such of the estate as remained at his death. In the testimony of witnesses there is nothing shown as to what portions of the remainder of the estate should be willed to respondents. Respondents, of course, were barred from testifying to the particulars by the force of § 1211, Rem. Comp. Stat. [P. C. § 7722]. But there is evidence of that in the will itself, which was made by Getty in their favor. Although not conclusive, it also is corroborative of the contract itself and of its terms.

Appellants also strenuously insist that there is no consideration shown for the alleged contract, contending that the release by respondents of any interest in their mother's estate, under the will or otherwise, was no consideration, because they released nothing, since the trial court in that probate proceeding found that Mrs. Getty died intestate. Appellants argue that, if she died intestate, no consent from respondents was necessary in order that her property be set aside as a homestead for D. L. Getty, and hence there would be no consideration for the oral contract to make a will, as respondents were giving nothing and waiving no rights.

We cannot agree with the above contention. Although the consideration may have been slight, it was sufficient to confirm D. L. Getty in the ownership and control of the entire estate, and the fact that he was getting a fee instead of a mere life estate was some additional consideration, and as we said in *Lewes* case, *supra,* the fact that the consideration was slight will not defeat the contract, since a person may contract to convey or devise his estate for any consideration which may seem to him sufficient, so long as it is a valid consideration.

We have no doubt that the consideration parted with by respondents to D. L. Getty was both valid and sufficient to support such a contract. It has been held that an heir at law may maintain an action for the specific performance of a contract between himself and the residuary devisee whereby the latter agreed to convey to the former an interest in the land devised in consideration of a promise to refrain from contesting the will. 25 R. C. L. 314, note 12.

Appellants also contend that respondents' action was barred by § 1385, Rem. Comp. Stat. [P. C. § 10017], reading as follows:

"If any person interested in any will shall appear within six months immediately following the probate or rejection thereof, and by petition to the superior court having jurisdiction contest the validity of said will, or appear to have the will proven which has been rejected, he shall file a petition containing his objections and exceptions to said will, or to the rejection thereof. Issue shall be made up, tried and determined in such court respecting the competency of the deceased to make a last will and testament, or respecting the execution by a deceased of such a last will and testament under restraint or undue influence or fraudulent representations, or for any other cause affecting the validity of such will. If no person shall appear

within the time aforesaid, the probate or rejection of such will shall be binding and final as to all the world.''

It is asserted that because Getty's will was admitted to probate August 6, 1923, no petition contesting the validity of the will ever being filed in accordance with the provisions of this statute, the six-months period having elapsed, the rights of respondents are barred. *Horton v. Barto,* 57 Wash. 477, 107 Pac. 197, 135 Am. St. 999; *State ex rel. Wood v. Superior Court,* 76 Wash. 27, 135 Pac. 494; *In re Hoscheid's Estate,* 78 Wash. 309, 139 Pac. 61, are cases cited to sustain this contention.

But this is not a contest of the later will. The fact that it has been admitted to probate as a last will and testament of decedent does not bar an action for specific performance of a contract previously entered into between decedent and others which he had failed to perform.

''Where a party for a valid consideration has agreed to make a specific devise in his last will and testament in favor of another person and dies without having done so, but has made a different will, this last will can not be refused probate. The probate court has no jurisdiction to determine or enforce agreements to make wills. Equity, however, will declare the executor or devisees under the will to be trustees for the performance of the testator's agreement, and it is therefore necessary that such will, though not in conformity with the provisions of the agreement, be admitted to probate. Thus an action to compel specific performance of a contract to devise real or personal property possessed at death, made upon a sufficient consideration or for services fully rendered, must be brought in a court of equity.'' 1 Alexander, Commentaries on Wills, § 149, p. 171.

And the same author, on page 96, § 84, states:

''. . . no action will lie to prevent the probate of a will different from that agreed upon, because it

is the agreement which is enforced in equity by declaring the executor or devisees under such will to be trustees for the performance of the contract and therefore it is necessary that such will be admitted to probate.''

See, also, *Owens v. McNally,* 33 L. R. A. 369; *Bolman v. Overall,* 80 Ala. 451, 2 South. 624, 60 Am. Rep. 107; *Svanburg v. Fosseen,* 75 Minn. 350, 78 N. W. 4, 74 Am. St. 490, 43 L. R. A. 427; *In re Burke's Estate,* 66 Ore. 252, 134 Pac. 11.

We are satisfied that the judgment of the trial court must be, and it is, affirmed.

Tolman, C. J., Fullerton, Mackintosh, and Mitchell, JJ., concur.