[No. 21884. Department Two. September 4, 1929.]

RUTH McCULLOUGH, *Respondent*, v. EDWARD
McCULLOUGH *et al.*, *Appellants.*[1]

[1]Reported in 280 Pac. 70.

*Hadley, Abbott & Madison* and *Howard & Kindall*, for appellants.

*Edwin H. Flick, Frank W. Radley, Stanley Kent,* and *Alfred J. Schweppe,* for respondent.

MAIN, J.—This action was brought to specifically enforce an oral contract to make a will. The defendants were the trustees and the beneficiaries under the last will and testament of Laura M. Gaudette, deceased. The trial was to the court, without a jury, and resulted in a decree awarding to the plaintiff what is referred to as the Eldridge avenue home and fifty thousand dollars in money, from which decree the defendants have appealed.

The facts essential to be stated are these: Edmund Gaudette and Laura M. Gaudette were married in 1883, and, for some years prior to Mr. Gaudette's death, in 1916, resided in the city of Bellingham. The respondent, a grandniece of Mrs. Gaudette, was born January 27, 1904. Her father and mother were Curtis C. Dennis and Mollie Dennis. Mrs. Dennis died in April, 1905, when the respondent was approximately thirteen months old. Thomas McCullough and Ellen McCullough, his wife, were the parents of Mrs. Dennis and the grandparents of the respondent.

After the death of Mrs. Dennis, Mrs. Gaudette desired to take the respondent into her home and bring her up as her own daughter, Mr. and Mrs. Gaudette having no children of their own. Without reciting the preliminary talk, there was finally entered into an oral agreement between Mrs. Gaudette, Mr. Dennis, the respondent's father, and Mr. McCullough, her grandfather, to the effect that the grandfather and grandmother were to adopt the respondent. She was to be taken into the home of Mrs. Gaudette, cared for, clothed and educated, and, at Mrs. Gaudette's death, was to be made an heir and receive the Eldridge avenue home and the sum of fifty thousand dollars. Mr. Dennis, the father of the respondent, was to sever his relations with her and in no manner interfere with the custody and control of her by Mrs. Gaudette. The father made and implicitly carried out his part of the agreement, believing it to be the best thing for his daughter, in view of the fact that the Gaudettes were wealthy and that he and the daughter's grandparents were people of very limited financial means.

After the respondent entered the home of Mrs. Gaudette, the relation between them was much the same as that of a mother and her natural child. The respondent was well cared for and educated, and to this extent Mrs. Gaudette carried out her part of the agreement. The respondent, in pursuance of the agreement, was legally adopted by her grandparents.

In 1921, Mrs. Gaudette made a will in which she bequeathed to respondent fifty thousand dollars in money. In May, 1925, she made another will, revoking the prior will, and in the later will, the respondent was not mentioned as a beneficiary. A little later, she added a codicil to this will by which she gave the respondent a bequest of five thousand dollars and permitted her to share as a residuary to the extent that the total amount

that she would receive, including the five thousand dollars, would be approximately ten thousand dollars.

After Mrs. Gaudette's death, which occurred June 25, 1925, her will was duly and regularly admitted to probate. The estate amounted to something over five hundred thousand dollars. After the executors had filed their final report, and before the decree distributing the estate to the trustees was entered, the respondent came into the probate proceeding and gave notice that she had an action pending in equity to enforce an oral contract to make a will. No claim had been filed by the respondent within the six months period, or at all. The court entered a decree distributing the estate to the executors named in the will as trustees. This decree provided, among other things, that, pending final determination of the suit instituted by the respondent, the Eldridge avenue home should not be sold by the trustees, and that, pending final determination of that suit, the trustees should retain cash or merchantable securities in the sum of seventy thousand dollars to meet any cash demand that the respondent might be adjudged entitled to. It was expressly provided that, by the entry of that decree, the respondent did not waive any rights, if any such existed, under the complaint which she had filed. The estate was distributed to the trustees in accordance with the decree, and the suit which was pending was finally brought to issue and tried, and resulted as above indicated.

██ The first question to be determined is whether the evidence sustains the contract. Upon this question, the evidence is direct and positive that Mr. and Mrs. McCullough were to adopt the respondent, she was to be taken into the home of Mrs. Gaudette, cared for and educated, made an heir and, upon the death of Mrs. Gaudette, was to have the Eldridge avenue home and fifty or sixty thousand dollars cash bequest. This evi-

dence is corroborated by witnesses to whom Mrs. Gaudette made declarations during her lifetime. While contracts of this kind are not favored, and many times not enforced upon oral proof, the power to make a valid agreement to dispose of property by will in a particular way has long been recognized. *In re Edwall's Estate*, 75 Wash. 391, 134 Pac. 1041; *Alexander v. Lewes*, 104 Wash. 32, 175 Pac. 572. The evidence, to sustain an oral promise to make a will, must be conclusive, definite, certain, and the contract must be established beyond all reasonable doubt. *Henry v. Henry*, 138 Wash. 284, 244 Pac. 686. The evidence in the case now before us fully meets the requirements of that rule. After an examination of the evidence, we entertain no doubt that the agreement above mentioned was in fact made. We are in entire accord with the trial court in sustaining the agreement.

The next question is whether the agreement proven was the one reserved to the respondent in the decree above mentioned, which distributed the estate of the deceased to the trustees. The case was tried upon the fourth complaint. This differed from the first in some material respects, the details of which it is not necessary to set forth. At the time the decree was entered, a suit was pending in which the respondent was seeking to enforce an oral contract to make a will. In the decree, there was specifically mentioned the Eldridge avenue home and the sum of seventy thousand dollars which should be retained by the trustees until after the determination of the suit. We do not understand the decree to mean that the respondent was limited thereby to proof of the precise contract alleged in her original complaint or be denied a recovery. To so hold and thereby defeat what we believe to be a just demand, would not very well accord with sound reason.

The variance between the first complaint and the

fourth complaint was not so great as to preclude the right of the respondent to recover, especially in view of the fact, as already stated, that the court in the decree required the trustees not to sell the Eldridge avenue home and to retain a certain sum of money to satisfy any judgment that might be rendered in the suit which was then pending.

The next question is whether it was necessary, within the six months' period, for the respondent to file a claim in the probate proceeding. In *Perkins v. Allen,* 133 Wash. 455, 233 Pac. 655, it was held that Rem. Comp. Stat., § 1385, barring any contest of a will after notice given and the lapse of six months, did not bar an action for specific performance of an oral contract previously made by the decedent to devise certain property held by him at the time of his death. It was there said:

"It is asserted that because Getty's will was admitted to probate August 6, 1923, no petition contesting the validity of the will ever being filed in accordance with the provisions of this statute, the six-months period having elapsed, the rights of respondents are barred. *Horton v. Barto,* 57 Wash. 477, 107 Pac. 197, 135 Am. St. 999; *State ex rel. Wood v. Superior Court,* 76 Wash. 27, 135 Pac. 494; *In re Hoscheid's Estate,* 78 Wash. 309, 139 Pac. 61, are cases cited to sustain this contention.

"But this is not a contest of the later will. The fact that it has been admitted to probate as a last will and testament of decedent does not bar an action for specific performance of a contract previously entered into between decedent and others which he had failed to perform.

"'Where a party for a valid consideration has agreed to make a specific devise in his last will and testament in favor of another person and dies without having done so, but has made a different will, this last will can not be refused probate. The probate court has no jurisdiction to determine or enforce agreements to make wills. Equity, however, will declare the

executor or devisees under the will to be trustees for the performance of the testator's agreement, and it is therefore necessary that such will, though not in conformity with the provisions of the agreement, be admitted to probate. Thus an action to compel specific performance of a contract to devise real or personal property possessed at death, made upon a sufficient consideration or for services fully rendered, must be brought in a court of equity.' 1 Alexander, Commentaries on Wills, sec. 149, p. 171.''

An oral contract to make a will, which has been fully performed by the person seeking to enforce it, may be enforced in equity as against the heirs, devisees or personal representatives of the deceased. The courts of equity will compel specific enforcement of such an agreement by requiring those upon whom the legal title has descended to convey or deliver the property in accordance with the terms of the agreement upon the ground that it is charged with a trust in the hands of the heir at law, devisee, personal representative, or purchaser, with notice of an agreement, as the case may be. In *Worden v. Worden,* 96 Wash. 592, 165 Pac. 501, it was said:

''The facts in this case show full performance of the oral contract on the part of the appellants and attempted full performance on the part of the decedent by the execution of the will agreed upon, although such instrument proved to be void through failure to conform to statutory requirements. This impressed the land with a trust which his successors in interest are bound in equity to discharge. The law is well settled that the heirs can be compelled to specifically perform the contract of their ancestor to the extent of making a proper conveyance, and in the event of their failure, that the court has power to appoint a commissioner to make the conveyance. In *Dicken v. McKinley,* 163 Ill. 318, 45 N. E. 134, 54 Am. St. 471, it is said:

'' 'The weight of authority is in favor of the position, that a man may make a valid agreement to dispose of his property in a particular way by will, and

that such contract may be enforced in equity after his decease against his heirs, devisees or personal representatives; (22 Am. & Eng. Ency. of Law, p. 974, and cases cited in note 2; Schouler on Wills, 2d ed., Sec. 454; Waterman on Specific Per. of Contracts, Sec. 51; Fry on Specific Per., 3d ed., Sec. 223; *Weingaertner v. Pabst,* 115 Ill. 412).'

"In *Burdine v. Burdine's Ex'r.* 98 Va. 515, 36 S. E. 992, 81 Am. St. 741, it is said:

" 'Strictly speaking, an agreement to dispose of property by will cannot be specifically enforced. . . . Yet courts of equity can do what is equivalent to a specific performance of such an agreement, by compelling those upon whom the legal title has descended to convey or deliver the property in accordance with its terms, upon the ground that it is charged with a trust in the hands of the heir at law, devisee, personal representative, or purchaser, with notice of the agreement, as the case may be. 3 Parsons on Contracts, section 406 (6th ed.); *Hale v. Hale,* 90 Va. 728, 730.' "

If a claim had been filed in probate and rejected, and an action brought thereon, it would have been necessary to measure the damages in money. To state it otherwise, it would have been necessary to measure the love, affection and companionship of the father when he gave up the custody and control and all association with his daughter and the love and affection and companionship which the respondent rendered to Mrs. Gaudette during her lifetime. For services of this character, the law furnishes no measure of damages. In *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465, there was involved an oral contract to make a will in consideration of personal services rendered to the deceased during his lifetime and which services were completely performed. It was held that such services are not measurable in money. It was there said:

"While it is generally held that the mere payment of the consideration is not sufficient performance to

take a parol agreement for the purchase of land from under the ban of the statute, the application of that rule to such a case as this would be palpably iniquitous. Services such as both parties must have known the agreement would entail, and such as were actually performed, the duration of which was to be for the uncertain period of the recipient's life, are not measurable in money. To remit respondent to the impossible task of recovering their money equivalent in an action at law would be grossly inequitable. As said in a case closely parallel on the facts:

" 'Money was not made the standard by which to measure the value of such care and attention as his pitiable condition would be likely to require for a period as uncertain as the duration of his life, and his intention to convey the premises in consideration therefor should, in the absence of fraud or injury to anyone, govern the action of the court. The case is clearly within the rule justifying courts of equity, in carrying into effect parol agreements, to convey real estate, after the full and faithful performance of such service in consideration therefor, as this record discloses.' *Lothrop v. Marble*, 12 S. D. 511, 81 N. W. 885, 76 Am. St. 626."

In I Page on Wills (2d ed.), sec. 95, it is said:

"If the services are not exceptional, or personal in their character, compensation can readily be made in money; and equity does not regard this as sufficient part performance to take the case out of the statute. The services are frequently of personal character; and frequently involve the abandonment by the proposed devisee of his own home, and his rendering personal care and attention to the promisor. No adequate compensation can be made in money for services of this type."

This being an action in equity to enforce specific performance of an oral contract which has been fully performed, it was not necessary that a claim in probate be filed. As already indicated, the filing of such a claim and resort to a law action would have been no benefit to the respondent. An action of this kind is plainly

not within the statute requiring a claim to be filed against the decedent's estate within six months.

Our attention has been called to the case of *Cavanaugh v. Cavanaugh,* 120 Wash. 487, 207 Pac. 657, but in that case the cases of *Velikanje v. Dickman,* 98 Wash. 584, 168 Pac. 465, and *Alexander v. Lewes,* 104 Wash. 32, 175 Pac. 572, are distinguished, and referring to those cases it is there said:

"Nothing herein said is intended to in anywise modify or lessen the force of those cases."

Our attention is also called to *State v. Evans,* 143 Wash. 449, 255 Pac. 1035, where an excerpt is quoted from the supreme court of Arkansas in which it is said that a non-claim statute of that state embraced equitable as well as legal demands. The test is not whether the action is legal or equitable, but the nature of the demand. In the case of *Morrison v. Land,* 169 Cal. 580, 147 Pac. 259, to which special attention has been called by the appellant, the plaintiff sought to enforce an agreement between him and the deceased, by which the latter was to bequeath a large sum of money, if he would, during the lifetime of the deceased, continue to act as chief clerk, accountant, bookkeeper and business confidant in the management and operation of a hotel business and other matters. It was there held that the agreement would not be specifically enforced because it was of such a nature that damages would operate as compensation for the breach thereof. The services there to be performed and which were performed by the plaintiff were of an entirely different nature than the consideration furnished for the contract in the case now before us. That case, in quoting from a prior decision of the same court, clearly recognizes the rule that specific performance will lie "where the plaintiff cannot be compensated in money."

To undertake to review the cases cited by the appel-

lant, would extend this opinion beyond all reasonable length. In what is hereinbefore said, we have stated and considered the questions which, in our opinion, are material and decisive of this controversy.

The judgment will be affirmed.

BEALS, FRENCH, MILLARD, and PARKER, JJ., concur.