[No. 22097. *En Banc.* June 25, 1930.]

HATTIE MARIA JONES, *Respondent*, v. SEATTLE TITLE TRUST COMPANY, *as Executor of the Estate of William H. Glass, Deceased, Appellant.*[1]

*Roberts, Skeel & Holman* and *Glen E. Wilson,* for appellant.

*Trefethen & Porterfield,* for respondent.

*H. G. Rowland* and *Dix H. Rowland, amici curiae.*

MILLARD, J.—Fifty-five years ago, the plaintiff, then seventeen years old, commenced to work for her sister's husband, William H. Glass, in his store in an Iowa town. She remained in the employ of Glass for fourteen years, married a Mr. Jones and, subsequent to the birth of a daughter (now Mrs. Poppleton, who

[1]Reported in 289 Pac. 36.

is a witness in this action) to that union, removed to Minnesota. Prior to 1911, Glass, who had moved to Seattle and prospered, was divorced from his wife, the plaintiff's sister. In 1911, Glass, by letter, agreed to give to plaintiff, Mrs. Jones, then a widow, with one daughter, residing in Minnesota, a house and lot if Mrs. Jones would come to Seattle and become his housekeeper. The offer was accepted, plaintiff acting as housekeeper for Glass from 1912 to 1917, when she and Glass intermarried. In 1921 the plaintiff and Glass were divorced. The plaintiff was awarded fifteen thousand dollars in money and a house and lot. From 1921 to 1926, Glass and his former wife, the plaintiff, corresponded, the latter having established her residence in San Francisco, California. From twenty-five to fifty letters were received by the plaintiff from Glass during that period. All of the letters were destroyed except two written in 1924, three written in 1925, and two parts of a letter which plaintiff claims was written in September, 1926, and contained the offer on which this action is based.

Plaintiff alleges the facts upon which she relies are that, by letter of September 11, 1926, Glass offered to give her the house and lot where he was then living, all of the household furniture and that he would provide for her in his will to the extent of twenty-five thousand dollars, if she would come to Seattle and take care of him during the remainder of his life. She accepted the offer and moved into the home of Mr. Glass, October 8, 1926, remaining there as his nurse and housekeeper until his death, April 14, 1928, at the age of eighty-seven years. April 11, 1928, three days prior to his death, Glass withdrew from a savings bank and from a loan association seventy-five hundred dollars which he presented to the plaintiff, who deposited same in a bank to her credit.

Upon his death, it was discovered that Glass had made no provision for Mrs. Jones, the only will found being one executed December 22, 1922, in which the defendant Seattle Title Trust Company was named executor. The executor obtained an injunction restraining the withdrawal from the bank of the seventy-five hundred dollars pending determination of title thereto. Plaintiff's claim against the estate was disallowed, whereupon she filed her complaint, alleging two causes of action. The prayer of the first cause of action is that she be adjudged the owner of the seventy-five hundred dollars presented to her by Glass. The second cause of action is for specific performance of the contract whereby Glass agreed to bequeath to the plaintiff twenty-five thousand dollars and to convey to her the house and furniture.

The trial was to the court, without a jury. The court found that the executor had sold the real estate and furniture for its fair market value of five thousand dollars, and that the contract could not be specifically enforced against the estate as to that real and personal property, but that a money judgment in that amount would be granted in lieu thereof. The court held that the plaintiff was entitled, upon her second cause of action, to a judgment against the decedent's estate for twenty-five thousand dollars plus the value of the real estate and furniture, or a total of thirty thousand dollars; that the gift of seventy-five hundred dollars, upon which was based the first cause of action, should be retained by the plaintiff and applied as part payment of the twenty-five thousand dollars due from the Glass estate. Judgment was entered accordingly, and from that judgment the defendant has appealed.

Appellant contends that the respondent has not sustained the burden of proof imposed upon her, insisting upon the application of the rule that:

"The evidence to sustain an oral promise to make a will, must be conclusive, definite, certain, and the contract must be established beyond all reasonable doubt." *McCullough v. McCullough,* 153 Wash. 625, 280 Pac. 70.

Was the contract made as alleged by the respondent? The agreement of which specific performance is sought by the respondent is claimed to have been in writing, a letter from Glass to the respondent in September, 1926, in which Glass agreed to bequeath to the respondent, Mrs. Jones, twenty-five thousand dollars and to convey to her a house and lot and certain furniture in return for her services as his housekeeper and nurse during the remainder of his life. She accepted that offer, made her home with him from October 8, 1926, until his death April 14, 1928. When she departed from her home in San Francisco, October 6, 1926, Mrs. Jones instructed her daughter to pack the furniture and other household effects. During the course of that packing and preparation for removal to Seattle, all of the letters Mrs. Jones had received from Glass were destroyed except five which were in the trunk she took to Seattle with her.

Two scraps of the letter written in September, 1926, were found, a short time prior to the trial, wrapped around a vase which had been packed in a box and stored in a garage. The two pieces were not recovered until an intensive search had been made following advice of counsel of the necessity of producing the letter containing the offer. That the letter was written by Glass, is not disputed. That Glass promised to give to the one to whom he was writing the house and furniture, and that he had provided or intended to provide in his will for that person, the language of the letter clearly indicates. That the letter was written to Mrs. Jones is not denied. Neither piece of the

letter discloses the date of the writing, nor, from the two pieces, can it be ascertained to what extent Glass intended to make provision in his will. Appellant contends that the letter was not written in 1926, but was the letter written in 1911 requesting Mrs. Jones to come west and become the housekeeper of Glass. One of the parts of the letter reads as follows:

"You say you will be satisfied if I give you a trust deed to the house and bill of sale of the furniture to be placed in escrow or some such way to make you positively safe as to that amount. I promised you I would do this if you wished it done, and have no objection to doing it any time. And as to giving statement signed before witness that I have willed you the amount named in will, I have no objection to, but I cannot see as that would make it any better for you or make it any more binding on me."

The other piece of the letter reads:

"I want you to get as much pleasure out of it as you can so that will be all satisfactory, excepting I felt it was not safe for me to remain alone but am feeling quite well now so feel I will be all right. With kind regards, with love, W. H. Glass."

When was the letter written? What was the extent of the provision Glass intended to make in his will for the person to whom he wrote the foregoing? The contracting parties could not, of course, testify. The tongue of Glass was silenced by death, and the lips of Mrs. Jones were sealed by the law. The substance of the testimony upon which respondent relies to prove that the contract was made as alleged is as follows:

When respondent's daughter and son-in-law were visiting in Seattle in August, 1926, the former, who, it is testified, was instrumental in causing the separation of Mrs. Jones and the decedent in 1921, sent a basket of fruit to Mr. Glass and invited him to call on her at the home of a Mrs. Page. Glass called on his

stepdaughter that day. She testified that Glass said that, if Mrs. Jones would return to Seattle, nurse him and take care of his house, he would see that Mrs. Jones received twenty-five thousand dollars, his home and the furniture, and would provide for the personal expenses of Mrs. Jones while she lived with him. Mrs. Poppleton suggested to Mr. Glass that he write to her mother and make the proposition. A Mrs. Smith, who had been renting the home of Mr. Glass, testified that she saw a letter written by the decedent to the respondent in which the decedent informed the respondent that the one then renting his house was preparing to move therefrom; and in that letter the decedent asked the respondent to return to him. That letter was written some time in September, 1926.

Mrs. Poppleton, her husband and daughter testified, substantially, as follows: September 11, 1926, Mrs. Jones received a letter from Mr. Glass making the offer he had mentioned to Mrs. Poppleton when she was in Seattle the preceding month. Mr. Glass stated in that letter that he had visited Mrs. Poppleton, with whom he had conversed concerning the proposition that Mrs. Jones return to him. Mrs. Jones replied, the major portion of her letter being written as suggested by her son-in-law, that Mr. Glass should place a deed of the home in escrow, together with bill of sale of the furniture, and that he should make a written statement before witnesses to the effect that he would by will bequeath to her twenty-five thousand dollars. The answering letter from Mr. Glass expressed his willingness to do the things demanded, but he stated he did not see that he would be more firmly bound thereby.

This is the letter of which only two pieces could be found. Mrs. Jones, by letter, accepted the proposition of Mr. Glass, departing from San Francisco, October

6, 1926, arriving at the home of Mr. Glass in Seattle, October 8, 1926, where she remained as nurse and housekeeper for Mr. Glass until his death. Mrs. Poppleton and her daughter, upon the departure of Mrs. Jones, cleaned the apartment and packed the household effects. The twenty-five to fifty letters received by Mrs. Jones from Mr. Glass from 1921 to 1926, among which were the two excerpts mentioned above, were not deemed of value, hence were torn into pieces and thrown into the rubbish box. Two letters written in 1924 and three written in 1925 were not destroyed, as they were in the trunk taken by Mrs. Jones to Seattle. When advised by counsel that it was necessary to have the letter making the offer to Mrs. Jones, search was made. Two pieces of the letter were found, about three or four weeks prior to the date of the trial, wrapped around a small vase that had been packed in a box and stored in a garage.

A Mr. Schmidt, with whom Mr. Glass boarded in September subsequent to the departure of his tenant, Mrs. Smith, and prior to the arrival in October of Mrs. Jones, testified that Mr. Glass told him two or three times that Mrs. Jones would return to Seattle, and that Mr. Glass stated further that he intended to give to Mrs. Jones the home place and furniture and bequeath to her twenty-five thousand dollars. Mr. Glass, about this time, also informed his former nurse, a Mrs. Dagan, that Mrs. Jones had agreed to return to Seattle and take care of him. Glass later told Mrs. Dagan that Mrs. Jones was to have the home and the furniture upon his death, and that he ''would like to see that she was taken care of besides.''

Edna Poppleton, granddaughter of the respondent, became a member of the Glass household in July, 1927, remaining there until the death of Mr. Glass. She, in

detail, testified as to the nursing of Mr. Glass by her grandmother. The decedent was an old man, suffering from the ills and disabilities incident to old age, hence the constant attendance by Mrs. Jones upon Mr. Glass to keep clean his bed, his bathroom, his person, was a heavy toll to be exacted of a woman past three score and ten. Edna overheard Mr. Glass say to her grandmother in September, 1927, when the latter requested money with which to purchase clothing, "Goodness gracious, I think that I have provided for you when I have left you twenty-five thousand dollars and the home and furniture."

To rebut the testimony that the letter, upon which the respondent relies to prove the contract, was written in 1926, the appellant emphasizes the fact of the faded appearance of the ink, as indicating that the letter was written seven or more years previous to 1926. An expert witness testified in behalf of the appellant that, in his opinion, the letter

". . . is approximately seven years or over of age, it has the characteristics of ink that has gone through a chemical change due to time and the action of the air on the ink."

. The expert also testified that the letters in the signature of Glass were written as he wrote years before. Another witness, familiar with the signature of the decedent, testified that the signature on the letter of 1926 resembled more nearly the signature of Glass as he wrote many years prior to 1926. The testimony of the expert witness of appellant was based upon the appearance of the writing upon the paper, no chemical test being made. The expert witness of respondent testified that there was no test by which to determine the age of handwriting in view of the variable factors, such as composition of the ink, character of exposure to air, etc.

The testimony explanatory of the preservation of a few of the twenty-five to fifty letters received by Mrs. Jones from Mr. Glass is to the effect that the letters retained related to investments concerning which Mr. Glass was advising Mrs. Jones; that the letters had been tossed into her trunk at the time of their receipt, and were in that trunk when she so hastily went to Seattle in October; that the letters retained were not subjected to atmospheric or chemical changes, as were the two pieces of the 1926 letter which had been used to protect a fragile vase stored in a box in a garage, where moisture and gas combined to fade the ink on the paper; that the letters destroyed by respondent's daughter and granddaughter were considered unimportant, and were placed in the rubbish box along with other papers.

The signature on the letter claimed by respondent to have been written in 1926 is the same as the signature of Mr. Glass on the two checks of April, 1928. The argument that the letter was written prior to 1926, inferably in 1911 when respondent was requested to come west to become housekeeper for Mr. Glass, is not supported by the evidence. That Glass promised in 1911 to give to Mrs. Jones a house, is admitted. It was not testified, nor is it contended, that the letter of 1911 requesting Mrs. Jones to come west contained any promise to make provision in the will of Mr. Glass for Mrs. Jones, or that he at that time promised to bequeath to Mrs. Jones any amount of money. The letter written in 1911 does not fit the 1926 situation. The 1926 letter contains reference to a will "And as to giving statement signed before witness that I have willed you the amount named in will, I have no objection to, . . ." The 1926 letter is in the handwriting of Glass, and his signature, as stated above, is

the same as his signature on two checks signed by him in 1928.

We are in accord with the view expressed by the trial court that:

"The opinion testimony of the witness Harris, not being based upon any chemical test but only upon the appearance of the writing upon the paper, is too general and indefinite to overthrow the positive testimony of other witnesses who testified as to its receipt by the plaintiff. And especially is this true in light of the testimony introduced by the plaintiff to the effect that there is no test by which the age of handwriting can be determined in view of the fact that so many variable factors, such as composition of the ink, character of exposure to the air or moisture, etc., enter into the question. And the testimony relative to the age of the handwriting by the similarity of the letter 'H' of the earlier signatures of the decedent loses much of its probative force when a study is made of his admitted signatures upon the withdrawal slips or checks introduced in support of the first cause of action and the other writings introduced in evidence."

Each of the witnesses of the respondent was excluded from the court room and did not hear each other testify. They were subjected to rigorous cross-examination. The fact that the principal witnesses of respondent (daughter, granddaughter and son-in-law) are related to her does not render their testimony incompetent. The testimony of the three relatives of respondent that an agreement was made in writing in correspondence passing between Glass and the respondent is corroborated by the testimony of witnesses Schmidt, Dagan and Page. Mrs. Jones went to Seattle relying upon the agreement, and complied with the terms thereof. Her conduct and that of the decedent are consistent with that theory.

In *Frederick v. Michaelson*, 138 Wash. 55, 244 Pac. 119, the testimony upon which the plaintiffs relied to

establish an *oral* agreement to devise property to them was largely that of witnesses as to conversations with, and statements made to them by, the deceased, twelve or more years prior to the date of the action, to the effect that the deceased intended to give his property to the plaintiffs. That case is clearly distinguishable from the case at bar. Here the respondent relies upon a *written* agreement and services performed pursuant to that contract. True, all of the terms of the contract are not shown by the letter of September 1926—that is, the amount that was bequeathed must be supplied by oral testimony that is clear and convincing—and the date of the agreement could only be proved by oral testimony. That the promise to bequeath some amount agreed upon by the parties clearly appears upon the face of the agreement. The offer to convey the house and furniture is definitely and certainly set forth in writing. The testimony of witnesses as to conversations with the decedent, and as to statements made by him as to his intention to bequeath twenty-five thousand dollars and to give the household furniture to the respondent, was that the conversations were had and the statements made within a comparatively short period prior to his death and coincident in time with the making of the written agreement.

That testimony, together with the testimony of other witnesses as to the time the letter from the decedent to the respondent was written, sustains the contention of the respondent that the letter was written in September, 1926. That the agreement was made as alleged, and that the respondent complied with every condition of that contract, are as clearly and convincingly established by the evidence as is possible where the tongue of the promisor is muted by death and the law does not permit the promisee to testify. In fact, respondent has conformed to the strict require-

ments of the rule as to the evidence essential to sustain an oral promise to make a will.

■ Respondent sought by her first cause of action to be adjudged the owner of seventy-five hundred dollars presented to her by the decedent three days prior to his death. The testimony of a Mr. Hutchinson, who had acted as an agent for the decedent in some coal mining investments, is corroborated by Edna Poppleton. He testified that he called at the home of Mr. Glass April 11, 1928, at whose request he obtained withdrawal slips from a savings bank and from a loan association, as Mr. Glass "wanted to give some money to Mrs. Jones." The withdrawal slips, one for twenty-five hundred dollars and one for five thousand dollars, were signed by Mr. Glass after same had been filled out by Mr. Hutchinson.

Glass took the two slips, handed them and the bank books of the savings bank and the loan association to Mrs. Jones, informing her that the money was a gift from him to her. Glass directed the respondent to put the withdrawal slips and bank books in her handbag and they would go down and withdraw the money and place same in a separate deposit in Mrs. Jones' name. Nothing was said, when the slips representing the seventy-five hundred dollars were handed over to Mrs. Jones, relative to investing the money in any mining proposition. The trip to withdraw the money was made by the decedent and respondent in a taxicab. The withdrawals of twenty-five hundred dollars from the loan association and of five thousand dollars from the savings bank were in the form of checks which Mr. Glass indorsed, and he accompanied the respondent to a bank where the two checks were deposited to the credit of Mrs. Jones. On April 13, 1928, Glass told Mrs. Poppleton at the breakfast table that he had given to Mrs. Jones seventy-five hundred dollars.

Two trust officers of the appellant testified that the respondent, when questioned regarding the matter, replied that the money was withdrawn by Mr. Glass and turned over to her to be used in connection with certain mining ventures if "it turned out, otherwise she was to use it as she saw fit," but that, since the will had not mentioned the fact that she was to receive twenty-five thousand dollars and the home property, she "considered she had the right and was going to use the money for herself." Mrs. Jones was unable to dispute that testimony, as she could not testify concerning transactions with the decedent. The court found that the decedent intrusted to the respondent seventy-five hundred dollars to invest as her judgment might dictate, and that, if Mrs. Jones had not invested that money prior to the death of Mr. Glass, the money should be used by Mrs. Jones as a credit upon the twenty-five thousand dollar bequest, and:

". . . that said sum of $7,500, which was deposited in the bank in the name of plaintiff should be applied as a credit upon or set-off to the judgment for said $25,000."

The court expressed the view that:

"It seems to me unnecessary to decide whether or not the $7,500 described in the first cause of action was intended and given by the decedent as a gift to the plaintiff, for in her subsequent conduct she has, I believe, in effect waived the same. Her statement to the executor, 'that she received it to invest in mining stock, or if that did not turn out, to use it as she saw fit and that inasmuch as she was not remembered in the will she felt she had a right to keep it,' together with the statement in her claim 'Exhibit S,' that credit might be given on the $25,000 claim for the $7,500, constitutes a waiver of her right to recover on this cause of action. That this money was given to her to use for investment purposes is not only consistent with the theory of her second cause of action, but in my opinion

lends support to her claim in that cause of action. On the other hand, the theory that the decedent would make her a gift of this money when he had not complied with his agreement, is inconsistent not only with that theory of the second cause of action, but is inconsistent with the testimony of the witness who testified that the decedent refused to give the plaintiff any money because he had already given her $25,000 and the house and furniture. The reasonable explanation of the decedent's action and remarks relative to this $7,500 is, I believe, that he meant to intrust the money to the plaintiff to invest as her judgment might dictate, and that if she had not invested it before his death, she could use it as a credit upon the $25,000 bequest.''

Respondent failed to sustain the burden of proving her first cause of action. We concur in the opinion of the trial court that the seventy-five hundred dollars was not intended as a gift by the decedent to the respondent. Our examination of the record fails to elicit any support for the conclusion that, if respondent did not invest the money prior to the death of Mr. Glass, the money should be applied as a credit upon the promised bequest. That the respondent waived her claim to the alleged gift, is evident from her statement in her demand against the estate that credit be given on the promised bequest of twenty-five thousand dollars for the seventy-five hundred dollars she received from the decedent. Nor did the respondent cross-appeal from that part of the judgment crediting the so-called gift against the award to her of twenty-five thousand dollars.

In lieu of the property which was to be conveyed to the respondent under the terms of the contract with the decedent, the respondent was awarded a money judgment of five thousand dollars, the amount received from the sale of the property by the executor, and the executor was declared a trustee for the respondent in that amount. That part of the judgment is affirmed.

The award to the respondent of "a money judgment in the status of a legacy in said estate" in the sum of twenty-five thousand dollars is also affirmed. However, that portion of the judgment reciting that the respondent is entitled to retain the seventy-five hundred dollars and apply the same as a credit against the judgment for twenty-five thousand dollars is erroneous. To that extent the judgment is modified.

*Amici curiae* contend that the judgment should be modified to classify the award of twenty-five thousand dollars as a legacy, and that the respondent should be placed on the same plane as those actually named as legatees in the will of decedent. The language of the judgment,

". . . that plaintiff be and hereby is awarded *a money judgment in the status of a legacy* in said estate in the sum of $25,000,"

is a sufficient answer to that contention.

MITCHELL, C. J., FRENCH, PARKER, FULLERTON, and MAIN, JJ., concur.

HOLCOMB, J. (concurring)—The two parts of the letter constituting the greater part of the evidence of the written agreement on the part of decedent by respondent, upon close examination, bear evidence of considerable age, other than change by mere chemical action by moisture and gas. Standing alone, they seem to me unworthy of credit. There is ample room for the conviction that they were written in 1911 prior to the first agreement between decedent and respondent.

Were it not for the corroboratory evidence of the two witnesses who are not interested in the litigation, and whose credibility was for the trial judge to determine, since he accepted their statements of admissions

by decedent as credible, I do not feel at liberty to reject the testimony.

Therefore, I feel obliged to concur in the results reached in this case.

TOLMAN, J. (dissenting)—I am wholly unable to accept the facts as found by the majority. The evidence regarding the letter which is relied upon to establish the contract is so contrary to all probabilities and all human experience that it utterly fails to be conclusive or certain, and, as it fails to carry conviction to my mind, I am in duty bound to say that the evidence is not of that clear and convincing character which the law requires in such cases.

BEALS, J., concurs with TOLMAN, J.