[No. 24343. Department One. April 21, 1933.]

*In the Matter of the Estate of* AUGUSTE KRAUSE,
*Deceased.*

CHARLES A. KRAUSE, *Appellant,* v. W. J. VON
MILLER *et al., Respondents.*[1]

[1]Reported in 21 P. (2d) 268.

*Riddell, Brackett & Fowler,* for appellant.

*Revelle, Simon & Coles* and *John W. Day,* for respondent.

HOLCOMB, J.—The uncontradicted evidence in this case by witnesses for appellant, whom the trial court at the conclusion of the trial announced were entirely credible and that whatever they had testified to would be accepted as the facts, shows the following state of affairs:

Auguste Krause, the deceased, prior to 1911, had been married to J. H. Krause, a much older brother of appellant, with whom appellant lived for a number of years, paying board, while the husband lived with them. About 1909, the husband, who appears to have been both morally and financially worthless, abandoned Mrs. Krause. In 1910, she brought suit for a divorce, which does not appear to have been finally determined, and in her complaint alleged that she had no separate property, and that the only community property belonging to herself and husband was lot 14, block 10,

in the Valentine Addition to Seattle, King county, Washington, with a house thereon, all of which were valued by her at fifteen hundred dollars, which was subject to a mortgage of five hundred dollars given to secure a loan in that sum; that the personal property of the community consisted only of business appliances and furnishings, wearing apparel and household furniture, which last was of the probable value of two hundred dollars.

Appellant owned the adjoining lot (lot 15), and also certain personal property and a policy of life insurance. Appellant was then a young, unmarried man, and Mrs. Krause was considerably older. On February 24, 1911, appellant and Auguste Krause entered into a written contract, which described appellant as a bachelor and Auguste Krause as the wife of J. H. Krause, containing certain preambles, among them that Mrs. Krause had been abandoned by her husband and he was unable to support her, and that he had deeded to her all his interest in and to lot 14, above mentioned, as her sole and separate property; that there was a mortgage of five hundred dollars thereon, which she was unable to pay; that appellant was willing to pay off the mortgage and provide for Mrs. Krause should she be in want and her husband unable to provide for her; that appellant was the owner of lot 15, block 10, Valentine Addition to Seattle, and certain personal property and a policy of life insurance.

It was therefore agreed between them that each of the parties would will to the other party all the property described, and also all other property in which they were then interested, and all interest in any after acquired property which should remain at the death of either party, with the right only remaining to each party to sell, assign, or transfer any of the property

4

which, or so much thereof, as should be necessary to provide for the reasonable living expenses of the party then owning the same; that appellant agreed to pay the principal and interest on the mortgage for the sole benefit of Mrs. Krause. The third paragraph of the contract, which is of particular importance in this controversy, reads:

"If either party shall hereafter marry, this contract shall from that time forward be no longer binding on either party and each shall have the right to make a new will. This paragraph is, however, subject to the following proviso: All benefits which at the time of any such marriage shall have been conferred pursuant hereto on either party or on the property of either shall be irrevocable and not recoverable by the other party; neither party shall have the right to make a new will as to property which has pursuant hereto been substantially benefited by the other party; and the wills made pursuant hereto shall, subject to the provisions of law which may conflict therewith, continue to remain in full force and effect unless and until the same shall be revoked by a new will."

The fourth paragraph of the contract recited that each party had made his or her will in favor of the other party in pursuance of the contract, both of which were by reference made a part of the contract and should be construed in the light of the contract. The contract was acknowledged before a notary public on the same day.

Mutual wills were executed in accordance with the foregoing contract by both parties, on the same day. That of Mrs. Krause, the one now before us, devises and bequeaths to appellant all her "right, title, interest and estate in and to all property wheresoever and whatsoever, whether heretofore or hereafter acquired," and declares that it is "made pursuant to a contract" that day executed by her and by her beneficiary, and that it was her "will and desire, if the construction

of this will should be deemed necessary, that this will be construed in the light of that contract."

After the written contract had been entered into and the mutual wills made, appellant continued to live in the same house with his sister-in-law for twelve years or more, or until December, 1923, when he married. He attempted to continue friendly relations with Mrs. Krause, but she turned against him and his wife and drove them away from her. Notwithstanding this fact, she did not make a new will until November 9, 1929, when she made one leaving all the property to respondent W. J. Von Miller. She died July 2, 1931, and the Von Miller will was probated on July 6, 1931. On September 2, 1931, appellant filed his petition setting forth the property which Mrs. Krause had left at her death, reciting the written contract in question, alleged the execution of the will of February 24, 1911, and alleged that he had performed all the terms and conditions of the written contract on his part to be performed.

The uncontradicted evidence further shows that, after making the written contract and mutual wills, until he married, appellant provided for Mrs. Krause and turned over all his money to her for safe keeping and saving. She told several witnesses that, although she had gone out working for a few days after the contract had been made, appellant objected thereto and she was not going out any more. With that exception, she never worked after that time, had no means of livelihood and no income except what she received from appellant, with the exception of some small sums of money received from her sister as birthday and Christmas presents. It is established that she had no possible income except what she received from appellant.

It is also incontrovertibly established by the evi-

dence that, after renewing the mortgage once jointly with Mrs. Krause, appellant paid it, it being the mortgage on her place. He also paid the taxes on both her lot and his from 1911 to 1918, or 1920. There were a number of public improvement assessments against both lots for six or seven years, which he paid. All of his money, with the exception of three or four hundred dollars which he got from his sister-in-law from time to time, was turned over to her, and when he needed to make payments of taxes, assessments for improvements and the like, he received the money necessary for the purpose from her. Mrs. Krause bought all the groceries, meat and other supplies on his credit, which appellant paid. Mrs. Krause told witnesses that appellant was better to her than an own son would be, and that she was taking care of his money, keeping it for him, so that he would have it in case he married.

On cross-examination by counsel for respondent of appellant himself, respecting certain sums of money that appellant had received from Mrs. Krause, although the word "gave" was sometimes used, appellant invariably ultimately stated that the money was all his money that he received from Mrs. Krause that had been turned over to her for safe keeping and for household and other expenses.

The Von Miller will was admitted to probate in the court below, without prejudice to the right of appellant to submit to probate the will to him and to litigate the questions of whether Auguste Krause had the power to revoke the will to him, and whether she had, in fact, revoked the same by the subsequent will, and whether the subsequent will should be entitled to probate, as such. Issues were directed to be framed accordingly.

Respondent Von Miller answered, among other

things, affirmatively alleging that petitioner had failed in any manner prior to the death of Auguste Krause to contribute in any way to her support or to pay off any of the indebtedness against the properties belonging to her; and that, on December 26, 1923, petitioner had entered into marriage with a woman named, and in the contract of February 24, 1911, it was agreed that, in the event of such marriage, the deceased would have the right to make a new will, subject to a certain proviso more particularly set forth in the alleged agreement. That part of the contract which provided that all benefits conferred "on either party or on the property of either shall be irrevocable and not recoverable by the other party" was alleged as a defense. The affirmative matter in the answer was denied by petitioner.

The cause coming on for trial before the court without a jury, it orally decided, as a matter of law, that the provision in the contract that "neither party shall have the right to make a new will as to property which has pursuant hereto been substantially benefited by the other party" was so ambiguous that it could not be understood and enforced. The action was dismissed.

█ "A contract is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which from the nature of language in general its meaning depends." 13 C. J. 520.

"The law does not favor, but leans against the destruction of contracts because of uncertainty. Therefore the courts will, if possible, so construe the contract as to carry into effect the reasonable intention of the parties if that can be ascertained." 6 R. C. L. 645.

"Benefit" is an ordinary word and without any special, technical significance. It simply means profit, fruit and advantage. 1 Bouvier's Law Dictionary, 3d

Ed., 338; Webster's International Dictionary; Black's Law Dictionary; 7 C. J. 1135; 1 Words & Phrases, 750.

"Ordinarily, when we speak of 'benefits to' us, we mean and refer to what is advantageous to us, whatever promotes our prosperity, or enhances the value of our property, or property rights, or rights as citizens, as contradistinguished from what is injurious." *National Surety Co. v. Jarrett*, 95 W. Va. 420, 121 S. E. 291, 36 A. L. R. 1171.

"Benefited," of course, is the past tense of "benefit," as a verb.

"Substantial" as an adjective means something worth while as distinguished from something without value, or merely nominal. Webster's New International Dictionary. 3 Bouvier's Law Dictionary, 3d Ed. In its ordinary parlance, "substantially benefited" in a contract would mean some worth-while advantage, profit or good. It seems to us there can be no question but that the saving of real estate from loss by sale for taxes and assessments for improvements benefiting her lot, during a considerable period of time, or from a mortgage foreclosure, would be substantially benefiting the real estate. The contract also referred to substantially benefiting the other party, who, in this instance, would be Mrs. Krause, of which there can be no doubt that she and her lot were substantially benefited by much of the money paid out by appellant.

We therefore consider that the contract is not so ambiguous as to be unenforcible, and should be enforced rather than destroyed.

■ Contrary to the contention of respondent, this is not a will contest nor a claim against the estate upon a money demand. *Perkins v. Allen*, 133 Wash. 455, 234 Pac. 25; *McCullough v. McCullough*, 153 Wash. 625, 280 Pac. 70.

In the last cited case, we held that an action to enforce specific performance of an oral agreement to

make a will is in the nature of recovery of property impressed with a trust, and not a contest of the will probated; and that Rem. Rev. Stat., § 1385, barring any contest of a will six months after notice, has no application. We also held that it was not necessary to file a claim in probate under the statute of non-claim, as a condition precedent to an action against executors to enforce specific performance of an *oral* agreement to make a will.

Contrary, also, to a contention of respondent, an action like this is as much an action in equity to enforce such a contract as if brought separately and independently in some other proceeding than the probate matter. All adversaries brought in may have complete relief. It has long been held that a superior court sitting in probate may settle issues and try the case as in any other civil cause, in this state. *Filley v. Murphy,* 30 Wash. 1, 70 Pac. 107; *Browder v. Phinney,* 30 Wash. 74, 70 Pac. 264; *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147; *In re Martin's Estate,* 82 Wash. 226, 144 Pac. 42; *Bayer v. Bayer,* 83 Wash. 430; 145 Pac. 433; *Traverso v. Cerini,* 146 Wash. 273, 263 Pac. 184. Hence, that contention of respondent as to the petition not stating a cause of action for the relief demanded, is untenable.

■ It is correct, as asserted by respondent, that, generally, where the promise to make a will is *oral,* the evidence must be definite, certain and positive. *McCullough v. McCullough, supra; Jones v. Seattle Title Trust Co.,* 157 Wash. 507, 289 Pac. 36.

In this case, the contract is in writing and not oral. It therefore is a valid contract under the statute of frauds and under our decisions. In *In re Edwall's Estate,* 75 Wash. 391, 134 Pac. 1041, is an extended review of the texts and cases upon that subject which need not be repeated here. In that case, which in-

volved mutual wills and an oral contract to the effect that the mutual wills should be irrevocable except by mutual agreement, or notice, we held it was within the statute of frauds and void. Had there been a contract in writing to take it out of the statute of frauds, it would have been sustained. To the same effect is *McClanahan v. McClanahan,* 77 Wash. 138, 137 Pac. 479, Ann. Cas. 1915A, 461.

In a case cited by respondent, *Doyle v. Fisher,* 183 Wis. 599, 198 N. W. 763, 33 A. L. R. 733, that court said:

"It should be borne in mind that it is the contract and not the will that is irrevocable. The authorities generally hold that the will may be revoked, but the contract stands and will be enforced by equity if it be a valid contract and such enforcement is necessary for the prevention of fraud."

We accept that statement as the general rule. We have enforced even oral contracts, as manifested by our cases such as the *McCullough* case, *supra,* and others, where the evidence of the contract was definite, certain and positive, or where the contract had been partially performed by the promisee, for the prevention of fraud. We have here a valid contract in writing which avoids the statute of frauds, and unless the contract is enforced, appellant is greatly injured and defrauded. See annotations in 43 A. L. R. 1024.

■ Respondent further contends that the testimony of appellant was incompetent and inadmissible in all respects under Rem. Rev. Stat., § 1211. The testimony of appellant as to payments to others of the mortgage, taxes and assessments was certainly not testimony as to transactions with the deceased, and was in no wise incompetent. (*Kilbourne v. Kilbourne,* 156 Wash. 439, 287 Pac. 41; *Piles v. Bovee,* 168 Wash. 538, 12 P. (2d) 914.) His testimony as to procuring

his own funds from the deceased was chiefly voluntarily elicited on cross-examination by respondent. In connection therewith, respondent contends that he testified that decedent loaned him sixteen hundred dollars at one time. He further testified, however, on cross-examination, that the sixteen hundred dollars that he procured from her was his own money which she had kept for him, and he simply got it back. Inasmuch as decedent had no possible income from any other source, this testimony of appellant should be accepted as true.

Respondent also asserts that the testimony of the witnesses for appellant, if taken as true, does not establish a cause of action in his favor. Respecting the testimony as to declarations made by decedent of the transactions with appellant, they were competent as admissions of decedent against interest, and it was necessary only to have preponderating, credible evidence thereof. It was not necessary that the burden of proof be to the extent necessary to establish an oral contract of a testamentary nature. The evidence of the witnesses is uncontradicted, and the trial court said that they were credible witnesses, worthy of belief.

After an examination of the entire record and the review of all the cases cited by respondent, not all of which are mentioned here, we are convinced that the trial court erred in dismissing the petition, and that appellant is entitled to the specific performance of the contract and the mutual will in his favor, made by Mrs. Krause.

The judgment is reversed, and remanded to the lower court with instructions to proceed in conformity herewith. Appellant shall recover his costs against respondent both below and here.

BEALS, C. J., MITCHELL, and MILLARD, JJ., concur.