[No. 9416.  Department Two.  June 23, 1911.]

SAMUEL SLOAN, *Plaintiff and Appellant*, v. D. W. WEST, *as Administrator etc., Defendants and Appellants.*[1]

HUSBAND AND WIFE—MARRIAGE—COMMUNITY PROPERTY—PRESUMP-TIONS—BURDEN OF PROOF.  Where parties cohabited as husband and wife, without any marriage, there can be no community property or presumptions attending the marriage state; and the burden of proof is upon the one claiming an interest in property the title to which is vested in the other.

APPEAL—REVIEW—FINDINGS.  Findings upon conflicting evidence will not be disturbed on appeal unless manifestly unjust.

APPEAL—REVIEW — HARMLESS ERROR — JURY TRIAL — QUESTION OF LAW.  The trial of an action to try title as an equitable case, and refusing to submit all the issues to a jury, is harmless where the evidence was insufficient to overcome the legal presumptions flowing from deeds.

APPEAL—REVIEW—DECISION—SUBSEQUENT APPEAL—LAW OF CASE.  Where, upon a former appeal, the supreme court held that the title to property was separate and subject only to defeasance by matters not in the record, and on a retrial, there was presented only a question of law as to the effect of deeds, the former decision is conclusive.

COURTS—PROBATE COURTS—EQUITABLE ISSUES—EXECUTORS AND AD-MINISTRATORS—FEES.  The superior court, sitting in probate, may exercise its equity powers, and having framed and tried an issue to try title, may, on final decree, allow administrators' and guardians' fees not covered by the pleadings on such issue.

EXECUTORS AND ADMINISTRATORS — FEES — ESTOPPEL TO DISPUTE. Where a man allowed his property to be brought into probate as community property and to remain there several years, employing attorneys and availing himself of the services of an administrator and guardian *ad litem*, the fees and expenses are properly charged to the property, although it was found in an equitable issue, framed to try title, that it was not community property, and that there was no property of the deceased for distribution.

Cross-appeals from a judgment of the superior court for King county, Albertson, J., entered August 10, 1910, upon findings and the verdict of a jury in favor of the plaintiff, in an action to quiet title.  Affirmed.

[1]Reported in 116 Pac. 272.

*Hastings & Stedman, Walter B. Beals, Frank A. Steele, Hughes, McMicken, Dovell & Ramsey,* for plaintiff.

*Charles E. Patterson, J. M. Gephart, Edward Von Tobel,* and *W. E. Humphrey,* for defendants.

CHADWICK, J.—This case came on for trial in the superior court and before a jury under the direction of this court (*In re Sloan's Estate,* 50 Wash. 86, 96 Pac. 684, 17 L. R. A., N. S., 960), wherein the court said:

"We therefore hold that the proofs in the record amply show that the appellant and Mary Steves were never lawfully married, and that the property involved in this action is not community property. If the respondents have any interest in the property as children or grandchildren of Mary Steves, deceased, the burden is upon them to establish that fact, as it does not arise out of any marriage relation. We cannot anticipate the questions that may arise in the further progress of the trial, and all such questions must be left open for future consideration. We do hold, however, that if it should appear that there was no lawful marriage between the appellant and the deceased, that the deceased was at all times fully aware of their meretricious relations, and that in view of such relations their property was kept separate and apart; the respondents have no right or interest in the property now in controversy."

Reference to the former decision may be had for a history of the relations of Samuel Sloan and Mary Steves, or Mary Sloan as she was known prior to the filing of the petition of Samuel Sloan to set aside the property which had been listed as community property in the probate proceeding. Notwithstanding the fact that this court in its former decision held that Samuel Sloan and Mary Steves were not, and had not been during the many years of their consort, husband and wife, and that the only question open was whether the heirs of Mary Steves could bear the burden of showing an interest in the property arising outside of the marriage relation, that issue seems to have been gone over again, and the court, upon the whole evidence, directed

a verdict to the effect that Samuel Sloan and Mary Steves were not, at the time of her death, husband and wife, and that there was no community property. At this juncture, and having found that no community existed, the judge being of the opinion that, if Mary Steves, in her lifetime, or those following her had any interest in the property, it was a question of equitable cognizance, he proceeded as a chancellor, and upon the record as then made and some additional testimony, decreed that Samuel Sloan and Mary Steves were not husband and wife, although they had lived together as such; and that,

"While in law and fact said property was and is the separate estate of Samuel Sloan, he always held out the said Mary Sloan to the world as his lawful wife during the long period of their cohabitation; that upon her death he requested the said D. W. West to act as the administrator of her estate, and represented to him that said property was the community property of said deceased and himself, from a desire to conceal from the world the fact of their true relationship."

And further, that it was agreed between Samuel Sloan and Mary Steves,

"That all property acquired by the said Samuel Sloan in his own name should be the property of the said Samuel Sloan, free and clear from any right, title, or claim of the said Mary Steves or Mary Sloan, and that all property acquired in the name of Mary Sloan or Mary Steves should be the property of the said Mary Sloan or Mary Steves, free and clear of any right, title, or claim of the said Samuel Sloan."

The court denied the asserted claims of the administrator and the heirs of Mary Steves, but allowed compensation to the administrator and his attorneys, and to Mr. Gephart, who has acted as guardian *ad litem* for a minor heir.

As suggested in the former opinion, the burden of showing an interest in the property which is now in controversy was upon the defendants, for the law is that, unless there be in fact a marriage, there can be no community property. The

one cannot exist without the other, and the statutory and general presumptions attending the marriage state where the community property doctrine is recognized have no footing. Therefore, instead of the property being presumed to be community property because of the cohabitation of the parties, it being proved that they were not husband and wife, the law puts it absolutely in the one in whose name it is lodged, and it may be held by him as against all the world, unless wrested by the application of some equitable principle. We can agree with the trial court that the burden has not been sustained by the defendants. The testimony is not entirely satisfactory on either side. Such of it as is entitled to consideration as evidence tends to show that it was the design of the parties, especially of Mary Steves, to keep that which she regarded as her own separate from the property of Samuel Sloan. It may be that she had some notion that she might have an interest in the property standing in the name of Samuel Sloan. But, whether or no, the whole record tends to show that what was in her name she regarded as, and intended to keep as, her separate property. It would be idle to review the evidence here, believing as we do that it is wholly insufficient to overcome the presumption of title to which we have alluded.

The court has found, and there is some evidence to sustain his conclusion, that there was an agreement between the parties to keep their property separate. Under the oft-repeated ruling of this court that we will not disturb a finding entered upon conflicting testimony unless manifestly unjust, we shall not discuss the question of tenancy in common and other questions raised by defendants upon the theory that there was no such agreement.

An assignment of error to which counsel has devoted some strength of argument is that the court erred in refusing to submit all questions of fact to the jury, instead of, as it did, submitting the one question of marriage, and thereafter determining other questions as a chancellor. If the right of

defendants depended upon the question of contract or no contract alone, we may admit (without deciding) that there is merit in counsel's contention. But aside from the question of contract to divide earnings and to maintain separate property, we think, and have so held, that the testimony was insufficient to overcome the legal presumptions of title flowing from the tenor of the deeds; hence, that no prejudice resulted because of proceedings subsequent to the discharge of the jury.

It is also asserted that Samuel Sloan should not be heard to deny the community character of the property. It is true that he permitted the property now remaining to be inventoried with other property a part of which has been sold to meet debts and expenses; and his present assertion that he supposed the property, which had been in the name of Mary Sloan and which had been conveyed to a daughter, was to be included and administered upon as a part of the estate, is not entirely satisfactory to the writer of this opinion. Yet we feel that the character of the property is not an open question. It was squarely presented on the former appeal. We have taken the liberty to review the briefs and records in that case, and it being a question of law merely, we must assume that the court would have so held and sent the case back for distribution, instead of holding that the title to the property was in Samuel Sloan subject only to defeasance by something not appearing in the former record. We have said enough to cover the propositions submitted by defendants; that is, (1) Was there a legal marriage between Samuel Sloan and Mary Steves? (2) If there was no valid marriage, was Mary Sloan in her lifetime vested with any interest, legal or equitable, in the property? and (3) has Samuel Sloan estopped himself from claiming the property to be his separate property? and will proceed to discuss the cross-appeal of Samuel Sloan, who comes here challenging the right of the court to allow fees to the administrator, his counsel, and the guardian *ad litem*.

It is contended that,. notwithstanding the proceeding is entitled in probate, it is in fact a suit to quiet title, and was so treated by this court on the former appeal, and that the pleadings present but two issues; that is, whether the property in question was the sole and separate property of Samuel Sloan, and whether or not Mary Steves died possessed of an equitable interest in any part of the property, in the event that she was not the lawful wife of Samuel Sloan; and that the court, having decided the general issue in favor of plaintiff, he could not grant relief to the administrator and counsel because it was not prayed for in the answers to the original petition of Samuel Sloan, the rule being that, in actions to quiet title, the relief granted must conform to the prayer of the bill and cannot extend beyond that prayed; citing 32 Cyc. 1380, and *Loeper v. Loeper*, 51 Wash. 682, 99 Pac. 1029; all of which is true, and would be controlling if we were inclined to admit that this is an independent action. Starting with the premise that the superior court of King county had jurisdiction of the subject-matter, it can make no difference whether the court sits in probate or in equity. It had jurisdiction to decide the whole controversy, even to purging its record of that which it could not finally adjudicate. The cases holding that a court sitting in probate is not robbed of its general equity powers were reviewed in *In re Sall*, 59 Wash. 539, 110 Pac. 32, 626. We there quoted from the case of *Filley v. Murphy*, 30 Wash. 1, 70 Pac. 107, as follows:

"In this state we have no probate court, properly speaking, as distinguished from the court that entertains jurisdiction of other matters. The court of general jurisdiction also hears and determines probate matters. Matters pertaining to probate are referred to what is called 'probate procedure,' as distinguished from what is denominated 'civil' or 'criminal procedure.' But when the court, sitting in a probate proceeding, discovers in a petition the statement of facts which forms the basis of a controversy, we see no reason why it may not settle the issues thereunder when an appearance has been

made thereto, and then proceed to try it in a proper manner, as any other civil cause."

But it does not follow that an issue being framed to try an independent controversy, the court is to be precluded of its right to close the case under its probate jurisdiction. It is the same court, operating upon the same subject-matter, with plenary jurisdiction to hear and determine; and although it may, for its own convenience, divide its work into departments and send an issue from one department to another, its right to proceed to final judgment or decree is not impaired. The property was brought to the superior court in a probate proceeding as the common property of Samuel Sloan and Mary Sloan, and the court exercised a proper jurisdiction when it held that there was no property for distribution, and that the expenses of the proceeding should be met by the one who had submitted his property to the court. Plaintiff cites the following decisions of this court to sustain his contention: *State ex rel. Bogle v. Superior Court*, ante p. 96, 114 Pac. 905, and *Michaelson v. Seattle*, ante p. 230, 115 Pac. 167. But we do not conceive these cases to be in point. They were independent actions. There was no element of estoppel, and while we may admit that there is no issue framed by the pleadings, the disputed questions were tried out and the findings of the court are within its jurisdiction and discretion, independent of the collateral issue as to the title of the property. The administrator was appointed with the knowledge and acquiescence of Samuel Sloan, and the attorneys were employed by him, and the appointment of a guardian *ad litem* was a necessary incident to the probate proceeding. Plaintiff was a moving party. He permitted his property to remain in probate for several years. He allowed part of it to be sold to meet debts and expenses, and he allowed the proceeding to continue until ripe for distribution, and then, because he conceived, as he puts it, that "they were not treating him right," he asserts a claim which on its face was so doubtful

that it has taken two appeals to this court to settle in his favor. The law will give him his property, but will not deny compensation to those who have in good faith done his bidding. As to the reasonableness of the allowance for fees and expenses, we find nothing in the record warranting a review or reversal of the judgment of the lower court.

Affirmed.

MORRIS, CROW, ELLIS, and GOSE, JJ., concur.