[No. 27755. Department One. May 2, 1940.]

FLORENCE M. GOLDEN, *Appellant,* v. JULIA McGILL *et al.,*
*Respondents.*[1]

*Gordon D. Eveland* and *Clarence J. Coleman,* for appellant.

*E. L. Skeel* and *Frank Hunter,* for respondent Julia McGill.

MILLARD, J.—This is an action for specific performance of a contract establishing a trust in favor of plaintiff in and to property derived by certain defendants from the estate of the decedent, plaintiff's father, who, it is alleged, breached an oral contract made by him with plaintiff's mother and step-father for plaintiff's benefit. The appeal is from the judgment of dismissal rendered upon the plaintiff's refusal to plead further after a demurrer had been sustained to her second amended complaint.

The second amended complaint, the allegations of fact therein, together with the exhibits made a part of that complaint, being admitted by the demurrer to be true, is summarized as follows:

By his last will and testament executed July 18, 1935, Eugene B. McGill, who died September 25, 1935, leaving an estate of an appraised value in excess of two hundred and fifty thousand dollars, bequeathed to his executrix, Hope H. Utley, twenty-five thousand dollars in trust for his daughter, Florence M. Golden, to be used for the education of her children (Rosemary Golden, Philip Eugene Golden, John Daniel Golden), to be paid at the rate of two hundred and fifty dollars monthly. He also bequeathed to his executrix six thousand dollars in trust for the use and benefit of his sister, Theresa McGill, to be paid to the legatee at the rate of fifty dollars monthly. His wife, Julia McGill,

who is not the mother of appellant, was made residuary legatee of the estate.

The will was duly admitted to probate and the estate administered thereunder in an orderly manner. An order was entered by the court June 20, 1938, approving the final account and construing will and decree of distribution entered in the estate of Eugene B. McGill, deceased. The order and decree recite that due and legal notice of the hearing by publication, posting and personal service on all necessary parties was given as required by law and the order of the court.

"That a citation was issued out of this court on the 29th day of April, 1938 . . . and that said citation was duly served . . . personally on each of said parties; namely, Florence Golden, Rosemary Golden, Philip Eugene Golden and John Daniel Golden on the 7th day of May, 1938, and with each citation served upon each of said persons there was also served a copy of the final account, petition for construction of will, and petition for distribution of the residue of said estate of the above named decedent.

"That this court has jurisdiction of the subject-matter of this proceeding and of all parties interested therein and of all parties necessary thereto."

A guardian *ad litem* appeared for the minor children, and appellant was represented by counsel at the hearing upon the final account of the executrix and upon her petition for construction of the will (under which will appellant was an heir and legatee) and distribution of the residue of the property belonging to the estate.

No claim was made by appellant. The estate was probated without reference to any right of appellant, as alleged in the complaint, to specific performance of a contract between her father and her mother and stepfather for appellant's benefit.

The court found that, under the provisions of the be-

quest in trust to Hope H. Utley of twenty-five thousand dollars for the decedent's daughter (appellant) to be used for the education of appellant's children, the executrix, as trustee, during the administration of the estate, paid to Florence M. Golden, to be used in the education of her three children as provided in the will $7,250, and that, since the filing of the final account and petition for distribution of the estate, the executrix as trustee had paid to appellant for the beneficiaries mentioned in the will the further sum of $500, thus leaving a balance of $17,250 to carry out the terms of the bequest, which balance is available and ready for payment in installments as they become due as contemplated by the bequest provision of the will.

The court further found that it was not the intention of the decedent that the closing of his estate should be delayed until the installment payments contemplated in the trust provision were paid in full, but that it was his intention that deferred installments unpaid at the time of the closing of the estate should be paid through the trustee named in the will, otherwise through a successor trustee to be named by the court.

The court found, in view of the resignation of the executrix from the office of trustee, it was necessary to appoint a fit and proper person to carry out the provisions of the trust, and to that end the Everett Trust & Savings Bank of Everett was appointed to serve as trustee for the purpose of carrying out the trust provisions of the will.

Further construing the above described trust provision of the will, the court found that, as against the decedent's estate, or the executrix, or the trustee, or the Everett Trust & Savings Bank, the successor trustee, or as against any other successor trustee, the children of appellant Florence M. Golden had no vested or contingent right or interest or claim or estate in and

to the fund. The fund of twenty-five thousand dollars is in trust for Florence M. Golden to be used for the education of her children.

The further findings of the court were, substantially, that appellant was vested with very broad discretion, and that the fund as received by her is given to her for the purpose of educating her children with incidental expenses, including maintenance, but that appellant is not a trustee in the sense that while she lives any bond may be required of her; that the testator intended the fund of twenty-five thousand dollars or investment securities purchased with it should be paid by the executrix, as trustee, or her successor trustee, to Florence M. Golden to enable her to educate properly her three children; and that the will does not impose any duty on the executrix or any trustee to supervise the distribution of that money once the trustee passes it to appellant, it being the intention of the testator that the responsibility of any trustee respecting the trust should end with the payments to appellant.

In the event any child of appellant shall die, the estate of such child shall have no right, title, or interest in or to the fund, but one-third of the residue of the fund in the hands of the trustee is relieved of the purpose recited in the will—"to be used for the education of her children"—and such one-third shall go to appellant direct. In the event of the death of Florence M. Golden, the successor trustee (Everett Trust & Savings Bank) shall apply to the court for further instructions as to whom to pay the remaining installments of the fund so held, but, in the event of such death, the remainder of the fund shall be impressed with the purpose of education as defined and described above.

Upon arrival at the age of majority or thereafter, any or all of the children may release any further claim they may have to education or maintenance

benefits under the provisions of this decree, and upon such release being filed the remainder of the fund, in so far as said child or children is or are concerned, shall be released from the purpose hereinbefore impressed upon the use by Florence M. Golden of the fund. Except as above provided, appellant has no right to make any testamentary or other voluntary or involuntary disposition of the installment payments.

The decree, pursuant to the findings, distributes the unpaid balance of $17,250 to the successor trustee to be devoted to the purposes described above. That decree recites that the court

" . . . has complete jurisdiction of the subject matter of the closing of the estate of Eugene B. McGill, deceased, and of all necessary and interested parties mentioned or referred to in the Last Will and Testament of said decedent and that each and all of the foregoing findings be and they are hereby confirmed and adopted as a part of this decree."

On March 25, 1939, the second amended complaint of appellant was filed. By that complaint, she attempted to renounce the will under which she was bequeathed—the bequest was accepted by her—a part of the estate of her deceased father, and she consented to further awards of portions of the property to other legatees. She alleged that the will which was probated breached an alleged agreement to give her an amount in excess of that received by her under the will. In this action, she made parties defendant her three children, her step-mother, Everett Trust & Savings Bank, and Theresa McGill, his (decedent's) sister.

In June, 1908, decedent went to the home of appellant's mother and step-father in Larimore, North Dakota, for the purpose of visiting appellant, whom he had not seen for many years, and to induce the mother and step-father to permit him to take his daughter west

to become a member of his family, to change her name to Florence M. McGill (she had assumed the name of her step-father) and establish the relationship of father and daughter. Decedent was childless, except for this daughter. He promised that he would supply appellant with means to complete her education and give to her advantages commensurate with decedent's circumstances and situation in life so long as she remained a single woman; and that, unless appellant predeceased him, upon his death he would bequeath to her a share of his estate subject to testamentary disposition, which amounted to one-half of the community property.

The proposition made by decedent was accepted by the mother and step-father of appellant for her benefit. Appellant came west and became a member of decedent's household. From that time, until her marriage eight years subsequently, her role was that of a dutiful loving daughter in the home of her father, decedent, who faithfully discharged his obligations under the agreement made by him with his daughter's mother and step-father. Each time after the date of the original agreement that decedent saw appellant's mother and step-father, he assured them of his desire and purpose to carry out the terms of the agreement. The will as made breaches the original agreement, which breach was induced by undue influence of decedent's secretary and of decedent's wife.

Appellant prayed that a decree be entered specifically enforcing the terms of the agreement described above and enforcing the trust created by operation of law in her favor upon the property and assets derived from or through decedent to the extent necessary to carry out the terms of such agreement.

The trial court sustained the demurrer to the complaint on the ground that the decree of distribution

entered in the probate proceeding was *res adjudicata* as to appellant's right to maintain this action.

A superior court sitting in probate is a court of general jurisdiction. The decree of distribution, which was entered after hearing on petition of the executrix for approval of the final account and construction of will and decree of distribution, constitutes a binding adjudication of the rights of appellant, who appeared generally and acquiesced in everything that was done and that could have been done. Her minor children were represented by a guardian *ad litem* in that proceeding. That is, the decree of distribution became *res adjudicata* of the issues here presented, as the matter in controversy in the case at bar was or could have been adjudicated in that hearing.

In *Bayer v. Bayer,* 83 Wash. 430, 145 Pac. 433, an insane wife, on her restoration to competency, instituted an action to recover certain real property which had been distributed as community property on the theory that the decree of distribution was void as to that property, which was in fact her separate property. We said:

"Under the constitution, the superior court is a court of general jurisdiction. It has jurisdiction of equity cases, actions at law, and proceedings in probate. It has been held that, under the statute to which reference has been made, the executor derives his powers, not from the court, but from the will, and that he is in fact a trustee. *State ex rel. Phinney v. Superior Court,* 21 Wash. 186, 57 Pac. 337. It has also been held that a court sitting in probate may settle issues and try a case as any other civil cause. *Filley v. Murphy,* 30 Wash. 1, 70 Pac. 107; *Sloan v. West,* 63 Wash. 623, 116 Pac. 272. The constitution does not make the superior courts probate courts. On the contrary, it makes them courts of general jurisdiction including 'all matters of probate.' As a court of general jurisdiction, it has the power to construe wills at the suit of proper parties. *Reformed*

*Presbyterian Church v. McMillan,* 31 Wash. 643, 72 Pac. 502. A decree of distribution, entered upon notice of publication in harmony with the statute, Rem. & Bal. Code §§ 1499, 1500, and 1589 (P. C. 409, §§ 395, 397, 595), is upon due process of law and conclusive, the same as any other judgment. *In re Ostlund's Estate,* 57 Wash. 359, 106 Pac. 1116, 135 Pac. 990; *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash. 672, 117 Pac. 492; *In re Bell's Estate,* 70 Wash. 498, 127 Pac. 100.

. . .

"The statute itself provides, 'Such estates *may be* managed and settled' without the intervention of the court. It does not provide that they *must* be managed by the executor without the intervention of the court. There is nothing in the statute which prevents an executor from invoking the jurisdiction of the superior court, whether it be called the equity or probate jurisdiction, if he deems it expedient to do so. He cannot be compelled to come into probate court at the suit of a third party, except upon the happening of some contingency expressed in the statute. In the case at bar, we have no doubt that the executor had a right under the peculiar provisions of the will to go into the superior court and have it construed. The fact that the proceeding was entitled in probate does not militate against this right. It will be presumed that the court sitting in probate entered the same order that it would have entered had the proceeding been brought upon the equity side of the court. . . . The executor believed that all of the estate was community property, and he had a right to go into court and have that fact determined by a court of competent jurisdiction, and when it was so determined, the guardian having appeared after due notice, the judgment was final and conclusive against an attack in a court of coordinate jurisdiction. The point we desire to emphasize is that there is a marked difference between a proceeding by a third party to require the executor of a nonintervention will to come into probate court, and a proceeding by the executor himself invoking the jurisdiction of such court. We think that, under the constitution and the statute, the judgment of the superior court of King

county was not void, and it follows that it could not be vacated by a court of coordinate jurisdiction."

In that case jurisdiction was obtained by publication as provided by statute. In the case at bar, there was due and legal notice of the hearing by publication, special citation was issued, and personal appearance was made by all interested parties.

See, also, *Bremerton Creamery & Produce Co. v. Elliott,* 184 Wash. 80, 50 P. (2d) 48, to the effect that a decree of distribution, if rendered upon due process of law, is a final and conclusive adjudication determining the person or persons in whom the property of a decedent has vested.

In *Coleman v. Crawford,* 140 Wash. 117, 248 Pac. 386,—an action brought by a daughter to quiet title to property—we held that the final order of distribution of the estate as the separate property of her father from which no appeal was taken was conclusive on the minor, who was duly represented by guardian *ad litem;* and that the final order precluded a subsequent claim on her behalf that it should have been distributed as community property.

In *In re Krause's Estate,* 173 Wash. 1, 21 P. (2d) 268, Auguste Krause, prior to 1911, was the wife of J. H. Krause, an older brother of the plaintiff, with whom plaintiff lived for a number of years. In 1909, the husband was morally and financially bankrupt. He abandoned his wife. In 1911, the abandoned wife and plaintiff, an unmarried man, entered into a written contract which described him as a bachelor and his sister-in-law as the wife of J. H. Krause. The contract recited that the wife had been abandoned by her husband, who was unable to support her, and that he had deeded to her all his interest in and to a piece of real property, as her sole and separate property, on which

there was a mortgage of five hundred dollars, which she was unable to pay.

Under the terms of that contract, plaintiff, Charles A. Krause, and the abandoned wife of J. H. Krause agreed that each of the parties would will to the other party all the property described and also all other property in which they were then interested and all interest in any after-acquired property which should remain at the death of either party; with the right only remaining to each party to transfer any of the property as should be necessary to provide for the reasonable living expenses of the party then owning the same. Charles A. Krause agreed to pay the principal and interest on the mortgage and provide for Mrs. J. H. Krause should she be in want and her husband unable to provide for her. Under the third paragraph of the contract it was provided that, if either party thereafter married, the contract would be no longer binding on either party, but all benefits which at the time of such marriage had been conferred pursuant to the contract on either party, or on the property of either party, "shall be irrevocable and not recoverable by the other party." Neither party under the contract had the right to make a new will as to property, which pursuant to this provision had been substantially benefited by the other party. Another paragraph of the contract recited that each party had made his or her will in favor of the other party in pursuance of the contract, both of which were by reference made a part of the contract.

Charles A. Krause, until December 1923, when he married, continued to live in the same house with his sister-in-law, the abandoned wife of J. H. Krause. His attempts to continue friendly relations with his sister-in-law thereafter were unsuccessful. She became unfriendly and drove him and his wife away from her, but did not until November 9, 1929, make a new will.

Under that will she left all of her property to W. J. Von Miller. She died July 2, 1931, and the Von Miller will executed November 9, 1929, was probated July 6, 1931. On September 2, 1931, Charles A. Krause filed his petition, listing the property which Mrs. J. H. Krause had left at her death, recited the written contract, alleged the execution of the will February 24, 1911, and pleaded that he had performed all the terms and conditions of the written contract on his part to be performed. He prayed specific performance of the contract.

In reversing the judgment dismissing the action, we held that the action was as much an action in equity to enforce a contract as if it had been brought separately and independently in some proceeding other than the probate. matter and that all adversaries brought in may have complete relief. We said:

"It has long been held that a superior court sitting in probate may settle issues and try the case as in any other civil cause, in this state." *In re Krause's Estate*, 173 Wash. 1, 9, 21 P. (2d) 268.

In *Filley v. Murphy*, 30 Wash. 1, 70 Pac. 107, we said:

"In this state we have no probate court, properly speaking, as distinguished from the court that entertains jurisdiction of other matters. The court of general jurisdiction also hears and determines probate matters. Matters pertaining to probate are referred to what is called 'probate procedure,' as distinguished from what is denominated 'civil' or 'criminal procedure.' But when the court, sitting in a probate proceeding, discovers in a petition the statement of facts which forms the basis of a controversy, we see no reason why it may not settle the issues thereunder when an appearance has been made thereto, and then proceed to try it in a proper manner, as any other civil cause. The court may require the proceeding to be separately docketed, if, when the issues are formed, it appears to be such as should be thus docketed.

Whether a citation should have issued on the strength of this petition or not, it is nevertheless true that appellant responded to the citation, and appeared generally by demurrer to the petition, and asked its dismissal simply on the ground that the court could not hear it as a probate proceeding. We think it was not necessary to sustain the demurrer and dismiss the proceeding on that ground. But under our liberal practice as to the form of actions the petition could be treated as in the nature of a complaint. The issues could be framed thereunder, and the cause tried without requiring another statement of the same facts under some other form or name. If it developed that it was not properly a probate proceeding, it would not be treated as such. We think the court did not err in overruling the demurrer and in refusing to dismiss the petition."

The following language in *Currier v. Perry,* 181 Wash. 565, 44 P. (2d) 184, cited and quoted with approval in *Large v. Shively,* 194 Wash. 608, 624, 79 P. (2d) 317, 82 P. (2d) 793, is applicable in the case at bar:

" ' "The general doctrine is that the plea of *res judicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

" 'That rule has been steadfastly adhered to and followed in this state. Some of our cases so holding are, as follows: *Achey v. Creech,* 21 Wash. 319, 58 Pac. 208; *Spokane Valley Land & Water Co. v. Jones & Co.,* 53 Wash. 37, 101 Pac. 515; *Loeper v. Loeper,* 81 Wash. 454, 142 Pac. 1138; *Woodland v. First National Bank,* 124 Wash. 360, 214 Pac. 630; *Sprague v. Adams,* 139 Wash. 510, 247 Pac. 960, 47 A. L. R. 529; *Munro v. Irwin,* 163 Wash. 452, 1 P. (2d) 329; *Cascade Lumber Co. v. Hargis,* 167 Wash. 409, 9 P. (2d) 366; *Globe Con-*

*struction Co. v. Yost,* 173 Wash. 528, 23 P. (2d) 895. In the last case, it was taken for granted that the rule is so well understood in this state that it was referred to in the terse, yet comprehensive language, as follows:

" ' "The matter in controversy here was included within the matter in controversy there. It either was, or else could have been, adjudicated in the former action. That judgment, therefore, became *res judicata* of the issues and matters here presented." ' "

In *In re Wren's Estate,* 163 Wash. 65, 299 Pac. 972, in which a niece and heir of the decedent sought review of decrees settling the final account of the administrator of the estate, we held, respecting the challenge of Mrs. Parks to the court's jurisdiction over her, that, as she failed to make a reservation of special appearance, the superior court, sitting in probate, could lawfully determine the lien claim of her counsel upon the funds of the estate which were awarded to her by the decree as an heir of the decedent.

"As to the claimed want of jurisdiction of the superior court in a pending probate proceeding to determine controversies arising over claims of property, or liens thereon, belonging to the estate, as between those interested in the estate and strangers thereto, the law is settled by our decisions that the court has and may exercise such general jurisdiction when it effectively acquires jurisdiction over the persons of the parties to such controversy in the probate proceeding, since our superior courts, in which estates are administered by probate proceedings, are courts of general jurisdiction. *Sloan v. West,* 63 Wash. 623, 116 Pac. 272; *In re Bell's Estate,* 70 Wash. 498, 127 Pac. 100; *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147. . . .

"Mrs. Parks, it is true, challenged the court's jurisdiction over her person, because of her not being required by law to respond to Mr. Pratt's petition seeking the establishing of his lien claim in the probate proceeding, regardless of the nature of the notice or summons which might be served upon her to that end, and also because in no event was she served with proper

summons or notice to so respond. We do not find in any of these filed objections to the jurisdiction of the court any reservation of special appearance; and besides, she, at the same time of filing those objections, filed her answer to Mr. Pratt's petition, responding to it upon the merits, without reservation of special appearance. Thus it seems plain to us that Mrs. Parks ultimately, voluntarily submitted herself to the jurisdiction of the court to the extent of enabling the court to lawfully proceed in hearing and determining Mr. Pratt's lien claim upon the merits." *In re Wren's Estate,* 163 Wash. 65, 299 Pac. 972.

In *In re Goss' Estate,* 73 Wash. 330, 132 Pac. 409, we held that one may not accept a legacy under an order of distribution, which is an election to take under the will, and then contest the provisions of the will under which the residuary estate is distributed. We said:

"The will of Anson Goss is not attacked in this proceeding. It must therefore be accepted as valid. Under its terms specific bequests were given to Alfred P. and Fred A. Goss. These bequests have been accepted by them under a decree sustaining the settlement of the Federal suit. They cannot in one breath accept the provisions of the will operating to their benefit, and in the next seek to defeat provisions operating to the benefit of other legatees. If the will is good as to one of its features, it is good as to all. It either disposes of the estate of Anson Goss or it does not. In consenting to a partial distribution under the will, these appellants have elected to take under the will, and ought not now to be heard to say, as beneficiaries of specific legacies under the will, they accept its terms but reject the provisions upon which the residuary estate is distributed."

The citation issued out of the court and served on appellant imposed upon her the duty to object if she had any objections to the construction of the will and to the distribution of the property under that will. She

appeared generally and made no objection. The decree in the probate proceeding of which she was a party is *res adjudicata* of the matter in controversy here.

The decree of distribution entered in the probate proceeding forecloses the right of appellant to adjudicate the question whether she is entitled to specific performance of the contract described in her complaint. The contention of counsel for appellant that appellant appeared in the probate proceeding for a limited purpose, is without merit. Her appearance was general, and the superior court had jurisdiction both *in rem* and *in personam*. She was in court for all purposes, hence she cannot relitigate that which could have been claimed in the distribution proceeding. As we stated above, the matter in controversy in the case at bar was included within the matter in controversy there. It either was or else could have been adjudicated in the probate proceeding. See, also, *In re Daub's Estate,* 190 Wash. 420, 68 P. (2d) 610; *Bayer v. Bayer,* 83 Wash. 430, 145 Pac. 433.

The following language of the opinion in *Coleman v. Crawford,* 140 Wash. 117, 248 Pac. 386, is pertinent:

"The appellant was properly served and properly brought into the probate proceeding. She there appeared . . . and, giving full faith and credit to the decree made by the probate court, it appears that in that action the very question was determined as to whether this property was Hiram's separate property or the community property of Hiram and Pearl, . . .

"The court having the authority to determine that very question, and it being the question which was raised in the proceeding, the court exercised that authority and determined the question. Whether the appellant might have appeared only as an heir of her father, the fact is that she appeared by her guardian *ad litem* in her individual capacity, and there was tried out the question as to the nature of this property and that question was determined adversely to her in-

terest. It was decided in *State ex rel. Keasal v. Superior Court* [76 Wash. 291], *supra,* in which the prior case of *In re Alfstad's Estate,* 27 Wash. 175, 67 Pac. 593, was reversed, that, in a probate proceeding to settle an account and distribute an estate, the court has jurisdiction to determine adverse claims to the property of the estate, and, in the absence of an appeal, such a decree, making a determination as to the nature of the property and as to its manner of distribution, is binding and conclusive. In any probate case, it is the privilege and duty of the court having jurisdiction of the matter to find and adjudge who are the heirs and to distribute the property of the estate to those heirs. Before any distribution can be properly made, it is necessary for the court to also determine what property belongs to the estate. Necessarily involved in the finding is a determination whether the property belongs entirely to the estate, or in part to the estate and in part to someone else. If that someone else claims an interest in the property, and he voluntarily comes into court, or is brought in, and an issue is raised, as was done here, the judgment becomes just as binding as if it had been made in an independent proceeding."

See, also, *O'Leary v. Bennett,* 190 Wash. 115, 66 P. (2d) 875, in which we held that, where there is compliance with every statutory provision leading up to the decree of distribution in the probate of a will, the decree is a final adjudication by a court of competent jurisdiction and *res adjudicata* as to who acquired the title of the testator and all matters involved.

In the opinion in the recent case of *In re Nielsen's Estate,* 198 Wash. 124, 87 P. (2d) 298, we again reiterated the rule that a decree of distribution from which no appeal is taken is final and conclusive upon all parties of whom the court has jurisdiction. Of course, it is not conclusive as to property which was fraudu-

lently withheld from administration, and if the decree is entered upon stipulation or agreement it may be attacked for fraud inducing the agreement.

There is some suggestion in appellant's brief to the effect that the court in the exercise of its jurisdiction over matters of probate has a limited jurisdiction. The early cases in which this court expressed that view were overruled in *In re Martin's Estate,* 82 Wash. 226, 144 Pac. 42. We there said:

"The grounds upon which the trial judge rested his decision on the merits of the controversy do not appear in the record, but it can be gathered from the briefs of counsel that he thought the court, in the exercise of its jurisdiction over matters of probate, was without power to inquire into the title to property, the ownership of which was in dispute. There are cases from this court which support this view, the most notable of which is, perhaps, the case of *In re Alfstad's Estate,* 27 Wash. 175, 67 Pac. 593. But the doctrine of this case has been disapproved in the later cases of *Filley v. Murphy,* 30 Wash. 1, 70 Pac. 107; *Reformed Presbyterian Church v. McMillan,* 31 Wash. 643, 72 Pac. 502; *In re Sall,* 59 Wash. 539, 110 Pac. 32, 626, 140 Am. St. 885; *In re Williamson,* 75 Wash. 353, 134 Pac. 1066; and *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147. . . .

"In the case of *State ex rel. Keasal v. Superior Court,* the latest expression of opinion by the court upon the question, this language was used:

" 'In conferring jurisdiction upon the superior courts in probate matters, the constitution makers did not carve out a section of the jurisdiction of the courts of this state and confer it as a limited subject upon the superior courts as probate courts of limited jurisdiction. The failure at all times to observe this fundamental fact has led to some confusion in our own decisions. The constitution simply throws probate matters into the aggregate jurisdiction of superior courts as courts of general jurisdiction, to be exercised along

with their other jurisdictional powers, legal and equitable, and as a part of those general powers. . . .

" 'When a superior court has presented to it through a petition, in any matter of probate, any issue touching the estate, it has jurisdiction both of the parties and of the subject-matter, and it deals with them not as a court of limited, but of general, jurisdiction. It may exercise all of its powers, legal or equitable, and may even invoke the aid of a jury to finally determine the controversy. The constitution has no more limited its powers in such cases than in others of which jurisdiction is conferred by the same constitutional provision.'

"Under the rule of these cases, it is clear that a superior court in a probate proceeding can exercise all of the powers of a court of general jurisdiction. It has power in such a proceeding to determine every matter necessary to the due administration of an estate, and it is its duty to do so, when such matters are properly presented for its consideration. So in the case at bar, if there is a substantial dispute as to the ownership of the property described in the petition, it can determine the issue in the manner such issues are usually determined. If equitable issues are presented, it may try the issues as a court of equity; if legal issues are presented, it may try the issues as a court at law, and to that end may set the cause for hearing at some convenient session when a jury will be present for the trial of such issues."

 The superior court, sitting in probate, has jurisdiction of an action for specific performance of an agreement to devise property. No statutory authority is necessary to confer that jurisdiction. The constitution (Art. IV, § 6) confers such jurisdiction. See *Bayer v. Bayer*, 83 Wash. 430, 145 Pac. 433, and *In re Krause's Estate*, 173 Wash. 1, 9 P. (2d) 268.

*McCullough v. McCullough*, 153 Wash. 625, 280 Pac. 70, cited by counsel for appellant as sustaining authority for the position that a case of the character of the

one at bar is an equity case of which disposition may not be made under the provisions of the probate code, and therefore jurisdiction was not acquired over the person of appellant for the purpose of passing upon the question involved in such equity case because of failure of service upon her of process applicable to an equity case, is distinguishable from the case at bar.

In *McCullough v. McCullough, supra,* that case was already in suit in a court of coordinate jurisdiction. In the case at bar, the appellant came into the superior court which was administering the McGill estate. She there found in existence the very issues which she now endeavors to urge in this independent action. The issues were already pending. The petition for construction of the will and for distribution of the estate constituted pleadings which appellant was required to meet. This, she could have done by objection, answer, or other pleading. *Filley v. Murphy,* 30 Wash. 1, 70 Pac. 107.

While in *McCullough v. McCullough, supra,* we stated that an action in specific performance could be prosecuted in equity, we never intended to hold that the superior court sitting in probate did not have jurisdiction to entertain and make disposition of the claim of an heir to estate property resulting from an agreement to devise where such issue was tendered. On page 630 of the opinion in that case we quoted from an opinion in an earlier case which quoted from 1 Alexander, Commentaries on Wills, 171, § 149, "The probate court has no jurisdiction to determine or enforce agreements to make wills." The *superior court* sitting *in probate* in this state *does have jurisdiction* to determine or enforce agreements to make wills. That inadvertent statement is inapplicable, in view of the fact that we have no probate court as distin-

guished from the superior court: The two are not separate and apart from each other.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and SIMPSON, JJ., concur.