[No. 28664.    Department Two.    September 15, 1942.]

LEONIE M. CASTANIER, *Appellant*, v. AUGUST MOTTET *et al.*, *Respondents*, WAHLUKE INVESTMENT COMPANY *et al.*, *Additional Respondents.*[1]

[1]Reported in 128 P. (2d) 974.

*Marvin Evans, Cameron Sherwood,* and *Albert N. Bradford,* for appellant.

*Lehrer & Marquis,* for respondents.

STEINERT, J.—Plaintiff instituted this action to foreclose a lien upon the interests of the defendants August Mottet, Henry Mottet, Aline Bourgogne, and Madaline Bonnardel as cotenants in ownership of certain described real estate. By her second amended complaint, she joined as additional defendants Wahluke Investment Company, a corporation, in its individual capacity and as trustee, Marie Mottet and eight other persons individually, the unknown heirs of any of the foregoing individuals, and all other unknown persons claiming any interest in the real estate above mentioned, and enlarged her prayer for relief by requesting that all the parties defendant be or-

dered to carry out a certain trust agreement hereinafter more fully detailed. The original defendants and Marie Mottet, one of the additional defendants, demurred to the amended complaint on several grounds, and, on the overruling thereof, issues were duly joined. The cause was tried to the court, sitting without a jury, and resulted in a judgment in favor of defendants and additional defendants, from which judgment plaintiff has appealed. The plaintiff will hereinafter be referred to as "appellant"; the four original defendants indicated above will be denominated "respondents" unless specifically designated by name; and the additional defendants, although some of them have not participated in this appeal, will be termed "additional respondents" or else personally identified.

On and prior to December 23, 1925, appellant was the wife of one George Mottet, who died on that date. Sometime thereafter, she married one Leo Castanier. At the time of George Mottet's death, he and appellant as a marital community owned an undivided interest in each of eight separate improved tracts of land, six of which are located in the city of Walla Walla, county of Walla Walla, Washington, and the other two in the town of Connell, in Franklin county, Washington. This community ownership was not uniform in extent as to all eight tracts, but varied from a one-half to a one-eighth interest. The remainder of the title to the various properties was held in cotenancy by the additional respondents herein, who derived their rights from sources and in a manner not material here. It may be stated, however, that Wahluke Investment Company, one of the additional respondents, owned an undivided one-half interest in three of the tracts in Walla Walla but no interest in any of the other tracts.

George Mottet left a will in which he provided for

the payment of certain specific bequests and devised and bequeathed the residue of his estate, in equal shares, to his nephews and nieces, August Mottet, Henry Mottet, Aline Bourgogne, and Mathilde Augier, and their respective bodily heirs. Mathilde Augier died some years ago, and her interest has passed to her daughter, Madaline Bonnardel. None of these residuary devisees and legatees, respondents herein, has ever resided in this state at any time pertinent to this case, August Mottet having lived in California since 1925 and the others having resided in France.

August Mottet, one of the above-mentioned nephews, was named executor in George Mottet's will, but waived his right to serve as such. Appellant thereupon applied for letters of administration and was appointed administratrix with the will annexed of her deceased husband's community estate. During the course of her administration, she paid, out of community assets, a bequest of fifteen hundred dollars for the saying of masses for the decedent and a duly filed claim based upon a note given by him to secure his separate debt amounting, with interest, to $10,547.74.

On November 7, 1930, a decree of distribution of the estate of George Mottet was entered, distributing an undivided one-half interest in the residue of the community estate to appellant and allotting the remaining half interest, in equal shares, to the four respondents named above, subject, however, to a lien or charge in favor of appellant in an aggregate amount representing one-half of the bequest and of the separate debt previously paid by appellant out of community assets, with interest at the rate of six per cent per annum from July 3, 1928, on one-half of the decedent's separate debt. The present litigation has arisen primarily out of the establishment of that lien.

On August 11, 1932, appellant instituted a proceed-

ing for the partition or sale of the eight tracts of land referred to above and which were owned in common by appellant, the four respondents, and the additional respondents herein. The decree in that case, filed March 4, 1936, provided as follows: (1) It adjudged and defined the proportionate interests of the respective parties in each of the six tracts in Walla Walla (some idea of the complexity of these interests may be derived from the fact that some of the cotenants owned greater rights in the lands than did others, and the further fact that the interests of each cotenant varied with respect to the different tracts); (2) it decreed that respondents' interests in the lands were charged as security for payment to appellant of the amount of her lien, together with interest as set forth above; (3) it determined that the lands could not be partitioned without great prejudice to their owners; (4) it quieted the titles of the respective owners as against each other; and (5) it appointed a referee and directed him to sell the six tracts at public auction (the two tracts in Franklin county being disposed of separately, in a manner not material here). In passing, we may say that, as found and declared by the partition decree, respondents each owned a one-sixteenth interest in three of these tracts, a thirty-second interest in another tract, and a sixty-fourth interest in the remaining two tracts; further, that in each instance appellant's interest equalled the combined interests of the four respondents.

Thereafter, on April 4, 1936, the refereee sold all the properties covered by the partition decree to Wahluke Investment Company, one of the additional respondents herein, for the comparatively nominal sum of $2,290.09, subject to all liens and encumbrances. This sale was confirmed on April 15, 1936, and the referee was ordered first to apply the proceeds in payment of the

costs and attorneys' fees fixed and allowed by the court and then to distribute any remaining sum to the various parties according to their respective interests as set forth in the partition decree. The referee executed his deed to Wahluke Investment Company on the same day, although it was not recorded until December 20, 1937.

It appears that, during the pendency of the partition proceeding, one of the six tracts, referred to in this action as the Idle Hour property, in which the Wahluke Investment Company owned an undivided one-half interest and the four respondents each owned an undivided sixty-fourth interest, was sold on contract to one Herrin. That transaction apparently was carried out through the mutual consent of all the parties having proprietary interests in the land. It also appears that, by verbal agreement, subsequently implemented by a written agreement more fully referred to in the next paragraph herein, the Wahluke Investment Company purchased all six tracts at the referee's sale, as mentioned above, with funds received from Herrin in payment for the Idle Hour property. The referee evidently accounted to the court for the money thus received, and it appears that virtually the entire amount was applied to the payment of costs and attorneys' fees in accordance with the court's previous order of confirmation. Respondents' counsel were paid two hundred and fifty dollars, which was considerably more than respondents' proportionate interest in the money realized from the sale.

A written contract, purporting to have been made on April 27, 1936, but not finally executed by all the parties thereto until December 15, 1937, was entered into by appellant and the additional respondents Marie Mottet, Sidonie Davin Jourdan, Felix Davin, Blanche Davin Miller, Lionel Davin, Aime Davin, and Armand

Davin, as parties of the first part, and Wahluke Investment Company, also an additional respondent herein, as party of the second part. This contract recited that the investment company had purchased the six tracts above mentioned at the referee's sale and declared that the title thus acquired was to be held by it in trust for the use and benefit of itself, the other signatory parties, and the four respondents herein, although it was expressly recognized in the contract itself that the four respondents, one residing in California and the others in France, were not actually parties to the agreement.

It was further stipulated in the contract that the various tracts of land were to be conveyed or exchanged by the trustee at such time or times and upon such terms and conditions as thereafter might be mutually agreed upon by specified groups of the signatories, the personnel of which varied somewhat, however, with respect to the different tracts, and that the proceeds from any sale thereof, or from any payments made by Herrin on his contract of purchase, should, after payment of certain costs and attorneys' fees, be distributed by the trustee according to the interests of the respective parties as established in the partition decree, which was by reference incorporated into the trust agreement. No specific time was designated for the termination of the trust. It was also specified in the agreement that the respondents' respective shares in such proceeds should be paid to them only after satisfaction of appellant's lien as recited in the decree of partition.

The trust agreement authorized the trustee to reimburse itself, out of the proceeds of the sale of any of the properties, for any expenses incurred in holding the title to the lands, but it expressly exempted the investment company from any obligation to pay

taxes, assessments, or other charges upon the property. The trustee was given the right to terminate the trust at any time by executing and delivering to the first parties, or any of them, a quitclaim deed or deeds conveying to them their respective interests, as well as those of the respondents, in the property or any part thereof.

Pursuant to that agreement, and during the period between December 20, 1937, and February 14, 1938, Wahluke Investment Company in its capacity as trustee made three payments to appellant totalling $612.15, to be applied in partial satisfaction of her lien against the respondents' undivided interests in the six tracts. This money apparently was all realized from payments made by Herrin on his contract of purchase, for it is conceded that at all times with which we are here concerned the other properties were actually managed by the co-owners themselves, acting through duly appointed rental agents who supervised the maintenance of those properties, collected the rents, and distributed them to the co-owners, either directly or through their respective attorneys. It is questionable whether respondents ever had actual notice that the $612.15 was to be, or was, paid over and applied in partial satisfaction of appellant's lien, and for the purposes of this case we shall assume that they had no such knowledge. It is clear from the record, however, that whatever appellant may have been paid from funds to which respondents might otherwise have been entitled was less than the amount of her lien against respondents' interests in the lands here involved.

Respondents have been delinquent in the payment of their share of the taxes on these properties in an amount exceeding eight hundred dollars, but there is apparently no immediate danger of loss of the property through foreclosure. The properties are

worth in the aggregate approximately thirty-five thousand dollars, and are yielding a net return of seven or eight per cent a year.

Appellant instituted the present action on July 7, 1939, seeking at first only the foreclosure of her lien against the undivided interests of the respondents. By her second amended complaint, in which she brought in the additional respondents as parties, she sought also, as against all parties defendant, to compel a sale of the properties under the trust agreement. The case went to trial in June, 1941, and evidence was adduced establishing the facts as we have outlined them with reference to the creation and status of appellant's lien. Some additional evidence, bearing more particularly upon the trust agreement, will be referred to at a more appropriate place herein.

At the conclusion of the evidence, the case was argued orally and submitted on briefs. The trial court after a painstaking study of the record, which is reflected in its very able memorandum opinion, entered judgment (1) dismissing appellant's action with prejudice, (2) declaring her lien against respondents' interests in the six tracts barred by the statute of limitations, (3) quieting respondents' title as against that lien, (4) ordering appellant to repay to respondents, with interest, the money paid to her by Wahluke Investment Company in pursuance of the trust agreement, and (5) allowing costs to the respondents and certain of the additional respondents and an attorney's fee to the guardian *ad litem* for other persons made parties to the suit.

In view of the rather complex situation presented by the history of this case, as heretofore detailed, we deem it appropriate to summarize as briefly as possible the facts and proceedings particularly pertinent to the issues now before us for determina-

tion. They may be stated as follows: (1) On November 7, 1930, a decree was entered distributing the estate of George Mottet and establishing appellant's lien against respondents' undivided interests therein; (2) on August 11, 1932, appellant instituted an action for the partition or sale of certain lands, including the six tracts here involved; (3) on March 4, 1936, a decree was entered in the partition suit defining and declaring the interests of the various parties in the six tracts, ordering the properties to be sold, and directing that respondents' interests therein, ranging variously from a one-sixty-fourth to a one-sixteenth interest in each of the respondents, be charged with and held as security for the payment of the amount of appellant's lien; (4) on April 4, 1936, the six tracts were sold, at public auction, to Wahluke Investment Company for $2,290.09; (5) on April 15, 1936, the sale was confirmed, and the referee was directed to apply the proceeds first to the payment of costs and to distribute the remainder to the various owners in proportion to their respective interests in the land; (6) on December 15, 1937, an agreement was executed by appellant and all but two of the *additional* respondents, providing that Wahluke Investment Company should, as trustee, hold the lands which it had purchased at the sale under the partition decree, and sell them as therein provided, the respondents herein, however, not being parties to this agreement but being expressly made beneficiaries thereof; (7) between December 20, 1937, and February 14, 1938, the trustee, without the actual knowledge or consent of the respondents, paid to appellant, from the funds derived from the sale of one of the tracts, the sum of $612.15, to be applied on her lien; (8) on July 7, 1939, appellant instituted this action as against respondents alone to foreclose her lien above mentioned; (9)

on September 19, 1940, she filed her second amended complaint, bringing in as parties defendant the *additional* respondents herein, and enlarging her prayer for relief by asking that all parties defendant be compelled to carry out the terms of the trust agreement to the extent of having the remaining tracts sold by the trustee and the proceeds distributed to the parties entitled thereto in accordance with the previous decree of partition and the order confirming the sale thereunder; (10) on October 29, 1941, the trial court entered its judgment in the present action dismissing appellant's complaint with prejudice and awarding judgment against her, and in favor of the respondents, in the amount theretofore paid to appellant by the trustee as a credit upon her lien.

The two principal questions presented upon this appeal are: (1) Whether or not appellant's lien against respondents' interests in the property here involved (i. e. the five tracts in Walla Walla which have not yet been sold) has been barred or in anywise affected by the statute of limitations or by the operation of the statutes relative to the duration of judgment liens; and (2) whether or not appellant may now compel the sale of the five tracts still covered by the trust agreement referred to above. All other questions merge into the disposition of the two just stated. The first question relates primarily to an issue solely between appellant and the respondents; the second question arises out of an issue more nearly between appellant and the additional respondents. We may add that Marie Mottet is the only additional respondent appearing upon the appeal and that she is represented by the attorneys who also represent the respondents.

The statutes involved in the consideration of the first question are Rem. Rev. Stat., §§ 155, 157, 459, and

460 [P. C. §§ 8160, 8162, 8110-17, 8110-17]. Section 155 declares that actions may be commenced only within certain periods after they shall have accrued, as specified in the succeeding sections of the same legislative act. Section 157 fixes a period of six years for the commencement of an action upon a judgment or decree of any court of this state. Section 459 provides that, after the expiration of six years from the date of the entry of any judgment rendered in this state, it shall cease to be a lien or charge against the estate or person of the judgment debtor. Section 460 commands that no suit, action, or other proceeding shall ever be had on any judgment rendered in this state by which the lien or duration of such judgment, claim, or demand, shall be extended or continued in force for any greater or longer period than six years from the date of the entry of the original judgment.

Respondents' contention with reference to this first question may be stated thus: Appellant's lien was created by the decree distributing her deceased husband's estate; that decree was a final judgment within the meaning of Rem. Rev. Stat., §§ 459 and 460; the subsequent decree in the partition suit initiated no new rights in aid of appellant, but merely *recited* the fact that a lien in her favor still existed, by virtue of the decree of distribution; that more than six years elapsed between the date of entry of the decree of distribution and the date of commencement of the present action; and that therefore appellant's lien can no longer be asserted in this or any other proceeding.

It may be readily conceded that appellant's lien was created by the decree of distribution, for it is plain from the record that such is the fact. It is also true, as asserted by respondents, that a decree of distribution is a final judgment, standing upon the same basis as any other judgment of a court of gen-

eral jurisdiction (*Bremerton Creamery & Produce Co. v. Elliott,* 184 Wash. 80, 50 P. (2d) 48; *Golden v. McGill,* 3 Wn. (2d) 708, 102 P. (2d) 219), and, if no appeal is taken from such decree, it becomes final and conclusive upon all parties of whom the court has jurisdiction (*In re Nielsen's Estate,* 198 Wash. 124, 87 P. (2d) 298; *Golden v. McGill, supra*). As recently stated by this court, if a decree of distribution is made upon due notice as provided by statute, it has the effect of a judgment *in rem* and is binding and conclusive upon all parties having an interest in the estate and upon all the world as well. *Farley v. Davis,* 10 Wn. (2d) 62, 116 P. (2d) 263; *Tacoma Savings & Loan Ass'n v. Nadham, ante* p. 576, 128 P. (2d) 982. In this instance, the court had jurisdiction of all parties interested in the estate of George Mottet, the decree of distribution was entered upon due notice, and no appeal was ever taken therefrom. It therefore became final, conclusive, and binding upon all parties.

▮ Respondents are therefore correct in saying that any action brought to enforce the lien created by the decree of distribution would have to be *commenced* within a period of six years after the date of entry of the decree. It is also true that more than six years have elapsed between that date and the commencement of the present action, and if we should follow respondents' theory in its entirety we would be required to hold that appellant's lien had by then fully expired and was incapable of further recognition in any way. But the crucial link in respondents' chain of contentions set forth above is their statement that the partition decree, intervening between the decree of distribution and the present action, initiated no new rights in favor of appellant but merely constituted a recognition of the subsistence of a lien *at that*

*time.* We therefore devote our attention to that proposition.

It is conceded that the partition suit was not only commenced, but was also concluded, well within the period of six years from the date of entry of the decree of distribution. It will be remembered that the partition suit culminated in a decree which, after defining the interests of the respective parties and confirming appellant's lien against respondents' interests, directed that all the lands here involved be sold at public auction. It will also be remembered that the lands were publicly sold by the referee to the Wahluke Investment Company for the sum of $2,290.09, that the sale was duly confirmed by the court, and that the referee was directed first to apply the proceeds of the sale in payment of costs and attorneys' fees and then to distribute any remaining sum to the various parties according to their respective interests as set forth in the partition decree. These orders of the court were fully executed.

Respondents could themselves have bid in the property at the referee's sale and thus have acquired full title, or they could have objected to the confirmation of the sale by the court. They did neither, and consequently the sale to the Wahluke Investment Company became absolute as to them, so far as the partition proceedings were concerned. The result was that, even though the sale was for a comparatively nominal sum and was evidently carried out pursuant to an agreement designed to permit a more advantageous disposition of the lands than could have been achieved by public sale, nevertheless the respondents' interests in the property, as residuary devisees of the estate of George Mottet, were absolutely terminated by the sale, and they thereupon ceased to be co-owners of any of the tracts in question.

Their former rights in the land itself were transmuted into rights merely to share in the proceeds of the sale and were strictly limited to that fund. But their share of the proceeds was virtually offset by the fees which were allowed their attorneys, to say nothing of the amount of appellant's prior lien against their interests. They consequently now have no valid claim against the fund derived from the sale.

Some contention is made by respondents to the effect that since the properties were bought at public auction with moneys derived from the sale of the Idle Hour property, in which respondents had undivided interests, they therefore acquired similar interests in the property thus purchased, by virtue of a resulting trust. But that argument is met by what has already been said. Respondents' combined ownership in the Idle Hour property was only a one-sixteenth interest, and their proportionate part of the price or value of that property was still far less than the amount of appellant's lien. · What they claim to have been their share in the funds used by Wahluke Investment Company in purchasing the properties at the referee's sale, actually belonged to appellant by the terms of the partition decree. Consequently, there was nothing, so far as respondents were concerned, on which a resulting trust could properly fasten.

If respondents can be heard to assert any claim at all to a subsisting interest in these properties, it must be upon the basis of the trust agreement which appellant and all but two of the *additional* respondents entered into some time after the properties had been acquired by the Wahluke Investment Company at public sale. As indicated above, respondents were not actual parties to that agreement, although they were expressly recognized as beneficiaries thereunder. Up to the present time, however, respondents

have not indicated any intention of availing themselves of that agreement, but on the contrary have insisted that they are not bound thereby. If they wish to maintain that attitude, they may of course do so, but in that event they will have no further interest in the properties, because of our conclusions stated above. If, on the other hand, they desire to avail themselves of the trust agreement, they will be bound by its terms as fully as the parties who actually signed it and will be held to have contracted for the continued existence of appellant's lien. In that event, however, the proceeds of any future disposition of the property here in question will be distributed in accordance with the trust agreement, and respondents' shares will therefore be first applied to the satisfaction of appellant's lien.

There is considerable discussion in the briefs concerning the particular nature of appellant's lien, respondents arguing that it should be regarded as a "judgment lien" within the meaning of Rem. Rev. Stat., §§ 459, 460, and therefore now barred from enforcement in this proceeding because of lapse of time, while appellant contends that it is an "equitable lien" imposed by judgment upon specific property and therefore not subject to those statutory provisions. In view, however, of what we have heretofore said with respect to the status of appellant's lien and respondents' present interests in the property here involved, it becomes unnecessary to consider the question latterly suggested. It is our conclusion that the trial court erred in dismissing appellant's complaint, in quieting respondents' titles against her lien, and in awarding respondents a money judgment against her.

We come, now, to the second question involved in this action, namely, whether appellant may now compel the sale of the five tracts which are still cov-

ered by the trust agreement. The provisions of that agreement have already been fully summarized. It will be recalled that it was therein provided that these tracts of land should be held by the trustee and sold or conveyed at such time or times and upon such terms and conditions as might thereafter be mutually agreed upon by certain of the signatories to the agreement. There is no showing here that the designated signatories have ever agreed to a sale of any of these tracts. On the contrary, appellant complains that there is a difference of opinion in that respect between herself and Marie Mottet, one of the additional respondents and a signatory to the agreement.

Appellant offered testimony to the effect that Mrs. Mottet had on several occasions stated that she did not want the property sold, assigning as a reason therefor the fact that the property paid a better rate of return than any other investment available, and as a further reason that it was against her deceased husband's wishes. In his memorandum opinion, the trial judge stated that this evidence was exceptionally weak, because it was not shown that there was any prospect of an immediate sale or that any direct proposition was ever submitted to Marie Mottet which would have required her to decide whether to sell or not.

We are convinced from a reading of the record that the trial court was correct in that view. There is no showing of any fraud or caprice on the part of the additional respondents, or the persons representing them, in failing or refusing to sell the property. There is no showing that the properties could be sold to advantage at the present time, or that the rights of any parties are seriously handicapped by a failure to sell them. We do not now say that the properties

should not be sold, nor do we hold that the trust may not be terminated upon a proper showing of capriciousness or bad faith. We simply hold that in this case appellant has not made a sufficient showing to compel a sale in the absence of mutual agreement among the interested parties. The trial court therefore acted properly in refusing, at this time, to order a sale of the properties covered by the trust agreement.

There are several other questions presented in the briefs, but we do not consider them of sufficient moment to require further discussion.

The judgment is affirmed as to the additional respondents (on the issue of the termination of the trust) and reversed as to the respondents (on the issue of the status of appellant's lien), with direction to the trial court to enter a decree confirming the right of appellant in any event to have the unpaid balance of her lien satisfied out of the proceeds of sale of any of the properties here involved, but granting to respondents the right to elect in writing, within sixty days after the coming down of the remittitur herein, to come within the terms of the trust agreement.

ROBINSON, C. J., BEALS, BLAKE, and JEFFERS, JJ., concur.